## STATE *v*. STANLEY KUPIS.

(*May* 21, 1935.)

LAYTON, C. J., HARRINGTON and RODNEY, J. J., sitting.

*P. Warren Green,* Attorney-General, and *Robert H. Richards, Jr.,* Deputy Attorney-General, for the State.
*James R. Morford* and *A. James Gallo* for the defendant.

Court of Oyer and Terminer for New Castle County, Indictment for Murder in the first degree, No. 81, May Term, 1935.

Mr. Morford, one of the attorneys for the defendant, stated that the defendant had made a statement to the police officers shortly after the shooting which had been reduced to writing and signed by him; that this statement was in the possession of the Attorney-General; that it was necessary for him to see it in order to properly prepare his defense, but that the Attorney-General had refused to grant him that privilege. He then requested the Court to direct the Attorney-General to permit him to inspect that paper.

LAYTON, C. J.:

The granting of the application would be contrary to all practice and would lead to dangerous results. It is, therefore, refused.

■ After the jury had been sworn but before the trial had actually started, the defendant's attorney requested the Court to permit the defendant to leave the prisoner's box and to sit by him in the Bar in order that he might more easily confer with him. He cited *Section* 4819 of the *Revised Code of* 1915.

LAYTON, C. J.:

This application is contrary to the well settled practice in this state and is, therefore, refused. *State v. Quinn,* 2 *Penn.* 339, 341, 45 *A.* 544.

LAYTON, C. J., charged the jury, in part, as follows:

■■ Manslaughter is the unlawful killing of another without any malice expressed or implied. It is of two kinds, first, voluntary manslaughter, where upon a sudden quarrel two persons fight and one of them kills the other, or where one greatly provokes another by some personal violence or otherwise, and the other in the heat of blood aroused by adequate provocation immediately kills the other.

With this sort of manslaughter, that is, voluntary manslaughter, you are not concerned, because there is no evidence before you of that kind of provocation which is sufficient in law to support a verdict of voluntary manslaughter.

■ The other kind of manslaughter is known as involuntary manslaughter, and this occurs where one in committing an unlawful act not felonious nor tending to

great bodily harm, or in committing a lawful act without proper care and caution undesignedly or unguardedly kills another.

Involuntary manslaughter may, therefore, arise from an unlawful act or from a lawful act done without proper care and caution.

■ Death by accident or misadventure is a kind of homicide which in the law is termed excusable homicide. This form of homicide occurs where one is engaged in doing a lawful act and unfortunately kills another. To justify a verdict of not guilty on the ground of accident or misadventure it must appear to the jury from the proof before them that the death was the unfortunate result of an act perfectly lawful in itself and that such act was done with reasonable care and regard for the lives and persons of others. If, however, there be any negligence or want of proper care, the loss of life following the act cannot be said to be accidental.

■ One of the contentions of the accused is that he cannot be convicted of murder in the first degree for the reason that at the time the fatal shot was fired, he was so intoxicated as to be incapable of forming a specific intent or a deliberate design to kill, and that, therefore, he is not guilty of murder in the first degree. Such a defense when advanced must be proved to your satisfaction. Evidence of intoxication should always be received with great caution and carefully examined in connection with the other proved circumstances.

■ As a general rule, drunkenness is no excuse for murder or any other crime; but where, as in a prosecution for murder in the first degree, it is necessary that a specific intent or deliberate design to kill be shown, evidence of

intoxication may be received and considered solely with respect to the exactness of the intent or the degree of the deliberation, and drunkenness may, therefore, serve to reduce the grade of murder from the first degree to the second degree.

In order, however, to reduce the grade of the crime, the jury must be satisfied that the prisoner was so drunk as to be utterly incapable of forming a specific intent or a formed design to kill; for a person who is intoxicated may yet be capable of premeditation and deliberation, and a drunken man who commits a wrongful act wilfully and with premeditation is as guilty in the eye of the law as if he had been sober. *State v. Faino*, 1 *Marv.* 492, 502, 41 *A.* 134; *State v. Hurley, Houst. Cr. Cas.* 28; *State v. Adams*, 6 *Penn.* 178, 65 *A.* 510; *State v. Bowen, Houst. Cr. Cas.* 91; *Russ. on Crimes*, 12, 13, 667.