MARGARET HOLBEN FISHER, Defendant Below, Appellant, v. THE STATE OF DELAWARE, Appellee.

(*June* 4, 1962.)

SOUTHERLAND, Chief Justice; WOLCOTT, Justice, and STIFTEL, Judge, sitting.

*James H. Hughes, III*, for appellant.

*Howard T. Ennis, Jr.*, Deputy Attorney-General, for the State.

Supreme Court of the State of Delaware, No. 17, 1961.

WOLCOTT, J.:

The defendant was indicted for first degree murder by reason of the death of her husband from cyanide poison administered by her. The jury acquitted her of first degree murder but convicted her of second degree murder. She appeals.

Three questions are presented by the appeal. These are:

1. Was it error for the trial judge to permit, over objection, and subsequently refuse to strike testimony as to prior illnesses of the deceased which showed symptoms consistent with the administration of arsenic to him over a period of time, the State failing to prove that the defendant had administered arsenic to the deceased?

2. Was it error for the trial judge to admit into evidence various publications on nursing and medicine found in defendant's home upon the theory that from this possession the defendant would be presumed to have knowledge of poisons and their effect, in the absence of proof that the defendant had ever read them?

3. Was it error for the trial judge to refuse to charge that drug addiction, if proved, was a mental illness and, as such, a defense to the crime charged?

On May 26, 1960 the deceased was taken violently ill at his home while eating supper. A doctor was finally called at the insistence of a neighbor who had been called by the defendant. The doctor admitted the deceased to the Beebe Hospital under suspicion that he had suffered a heart attack. At the time of admission the deceased was unconscious and later died without regaining consciousness.

While the symptoms of cyanide poisoning in many respects are similar to those of a coronary attack, a staff doctor was not satisfied with the diagnosis of heart attack and, at her insistence, an autopsy was performed on the deceased. The autopsy and subsequent chemical analysis of the body contents and parts of the body disclosed a lethal amount of cyanide in the deceased's stomach and the presence of arsenic in other parts of the body.

On May 29, 1960 the defendant confessed to the police that she had put one-quarter teaspoonful of a rodent killer called Cynogas, purchased by her on May 20, 1960, in the deceased's asparagus soup. She, in her confession, stated that she had done so, not with the intention to kill him, but merely to make him ill so as to cause him to need her to nurse him, and to make him love her and depend on her. The amount of cyanide contained in a one-quarter teaspoonful of Cynogas, however, is many times a lethal dose of that poison.

In her defense the defendant testified that in 1948 she commenced using Nembutal, a barbiturate, on a doctor's orders. Thereafter she was supplied with this drug by the doctor at the rate of approximately 1000 tablets a month. Her usage of the drug gradually increased until, by May, 1960, she habitually took about thirty tablets a day. The medical testimony establishes that the defendant was addicted to the use of Nemabutal to such an extent that she could not voluntarily refrain from taking it.

An addict of barbiturates learns to regulate the dosage so as to keep himself under the influence of the drug without going to sleep. The effect is to produce an intoxication similar to that produced by alcohol. Indeed, both forms of intoxication have similar symptoms. It should be stated, however, that on the evening of May 26 the defendant, on her arrival at the Beebe Hospital with her unconscious husband, did not, in the opinion of the staff doctor, show any symptom of intoxication. On the contrary, in the opinion of the doctor, she seemed sharp and alert in her answers to questions concerning her husband's illness.

We turn now to the questions raised by this appeal. In discussing them reference to additional facts will be made as required.

First, it is argued that error was committed in permitting testimony as to the prior illnesses of the deceased during the year preceding his death and of the symptoms of these illnesses. In substance, the testimony was that on several occasions the deceased had complained of and was treated for violent stomach cramps, splitting headaches, and a persisting bitter taste in his mouth. These symptoms are, of course, consistent with gradual arsenic poisoning. The defense objected but the testimony was not excluded on the theory that it tended to show on the part of the defendant a formed scheme or design to poison her husband.

The State failed to prove, however, that the defendant had given the deceased arsenic. It failed, also, to prove that she had a supply of the poison available to her. The most that can be said is that there was a possible implication that arsenic somehow got in the deceased's food which was prepared by the defendant. Corroboration to some extent comes from the traces of arsenic found in the deceased's body.

However, we do not reach the question of whether or not error was committed in this respect. The evidence was material only on the issue of premeditation, a necessary element of the crime of first degree murder. The prisoner, however, was acquitted of this crime and, hence, the question has become moot. *Powell v. State*, 7 *Terry* 551, 86 *A.* 2d 371.

Secondly, it is argued that error was committed by the admission into evidence of certain publications found in the defendant's home which the State argued demonstrated her knowledge of poisons. No showing was made that the defendant had ever read the publications.

As a matter of fact, in some way confusion has developed on this point, for the trial judge refused to admit the publications into evidence with the exception of an issue of a nursing journal addressed to the defendant. The ruling was made because of the failure of the State to prove that she owned or had read the offered publications.

In any event, no prejudicial error took place, since the publications except as noted were excluded from evidence.

Finally, it is argued that error was committed when the trial judge charged the jury that drug intoxication at the time of the commission of the crime would not constitute a complete defense to the charge, but would, if satisfactorily established, reduce the crime from first to second degree murder. It has long been the law of this State that intoxication, if existing to such an extent as to prevent the forming of a specific intent, will reduce the crime of murder from first to sec-

ond degree. *State v. Kupis*, 7. *W. W. Harr.* 27, 179 *A.* 640; *State v. Faino*, 1 *Marv.* 492, 41 *A.* 134.

The trial judge refused to charge as requested by the defendant that intoxication resulting from the taking of drugs by one addicted thereto is not voluntary intoxication; that drug addiction, itself, is a form of mental illness, and that if the addiction is the cause of the drug intoxication then that circumstance is a defense to the crime charged by reason of insanity or mental illness.

At the argument before us it became apparent that counsel for the prisoner was seeking to have us change the rule heretofore followed by our courts with respect to the defense of insanity. Indeed, counsel admitted as much. The argument made is another attempt to have us adopt the rule of *Durham v. U. S.*, 94 *U. S. App. D. C.* 228, 214 *F.* 2d 862, 45 *A. L. R.* 2d 1430, abandoning the right and wrong concept of *Reg. v. M'Naghten*, 8 *Eng. Rep.* 718, long followed in the courts of this State. We are asked to substitute for it the concept that if an unlawful act was the product of a mental illness, then no criminal responsibility follows.

In *Longoria v. State, Del.*, 168 *A.* 2d 695, app. dis. 368 *U. S.* 10, 82 *S. Ct.* 18, 7 *Ed.* 2d 18, we were asked to discard the McNaghten Rule and substitute for it the Durham Rule. After a full consideration of the matter, we refused to do so. Nothing has been urged upon us in this appeal to lead us to change this view. It follows, therefore, that it was not error to refuse to charge the jury as the defendant requested.

As a matter of fact, it appears to us that the record in this case falls short of establishing that the drug addiction of the prisoner, even though it be considered a mental illness, led to the commission of this homicide. On the contrary, it appears that throughout she was in possession of her faculties and knew the consequence of her act.

The conviction is affirmed.