UNITED STATES of America ex rel. Regent GODDARD, Appellant,

v.

James T. VAUGHN, Superintendent, Delaware Correctional Center, Appellee.

No. 79–1395.

United States Court of Appeals, Third Circuit.

Argued Nov. 14, 1979.

Decided Feb. 12, 1980.

Richard E. Fairbanks, Jr., Asst. Public Defender (argued), Wilmington, Del., for appellant.

Francis A. Reardon, Deputy Atty. Gen. (argued), Dept. of Justice, Wilmington, Del., for appellee.

Before HUNTER, WEIS and GARTH, Circuit Judges.

## OPINION OF THE COURT

WEIS, Circuit Judge.

The question in this appeal is whether a state may place the burden of proving voluntary intoxication on an accused who invokes it as a defense to a crime requiring specific intent. We find no constitutional prohibition to such a statutory allocation of the onus probandi and affirm the denial of a petition for a writ of habeas corpus filed by a state prisoner convicted of first degree murder.

A Delaware state court convicted the petitioner of first degree murder, first degree rape, and first degree conspiracy. He is serving sentences of life imprisonment for the murder and rape convictions and 30 years for the conspiracy count. After exhausting state remedies, he sought a writ of habeas corpus in the federal district court only with respect to the conviction for murder.[1] After reviewing records of the state proceedings, the court denied the petition.

In February of 1976, the petitioner, then 18 years of age, and two other youths, Robert W. Jones, Jr., the petitioner's codefendant in state court, and Carey Dale Shirk, were living on the second floor of a farmhouse in Smyrna, Delaware. Goddard and Jones had rented the rooms from a third party while the owner, a woman over 70 years of age, was away. When she returned a week after the premises had been rented, Goddard suggested to his roommates that they kill her to avoid paying rent. The three youths then went to a pool hall for about two hours. When they came back to the farmhouse, Goddard again proposed that they lure the landlady to their rooms and kill her. After instructing his roommates to hide, he went to the first floor and persuaded the woman to accompany him upstairs. After she entered the rooms, he attacked her. Shirk fled, but Jones remained in an adjoining room. Goddard then bound, raped, and strangled the woman.

Jones came into the room as Goddard finished killing his victim and assisted in disposing of her body. They placed the corpse in the trunk of the victim's car and, with Goddard at the wheel, drove to Elkton, Maryland. There, they concealed the body in a wooded area.

At trial, the petitioner testified that he had taken LSD and smoked marijuana and "angel dust" shortly before the murder. He contended that as a result he was hallucinating and never consciously intended to kill the victim. Jones and Shirk testified that to their knowledge Goddard had not used any drugs on the day of the killing, and in their opinion he was not intoxicated. Jones stated that Goddard was "[p]retty calm" and acted "like he knew what he was doing."

The trial judge charged the jury that voluntary intoxication was available as a defense only if it was "such as to make it impossible for [Goddard] to have the state of mind required for [the] offense [(first degree murder)]. In this case, the relevant state of mind was the intent to kill the alleged victim." If the defendant was able to prove the necessary degree of intoxica-

---

1. The petitioner was originally sentenced to death for the crime of first degree murder but was resentenced to life in prison without parole when the Supreme Court of Delaware held the death sentence unconstitutional. *State v. Spence*, 367 A.2d 983 (Del.1976).

tion by a preponderance of the evidence, then the jury was told to consider whether he was guilty of second degree murder or manslaughter.[2]

The court also charged that to find the defendant guilty of murder in the first degree, the jury had to find two elements: (1) that the defendant caused the death of the victim, and, (2) that the "defendant acted intentionally; that is, it must have been the defendant's conscious object or purpose to cause death . . . . If after considering all of the evidence, you find that the State has established beyond a reasonable doubt that either defendant acted in such a manner as to satisfy all the elements, which I have just stated, at or about the date and place stated in the indictment, you should find the defendant guilty of Murder in the First Degree."

Instructions were also given with respect to the lesser degrees of murder and manslaughter, specifying that the state had the burden of proof beyond a reasonable doubt. Near the conclusion of the charge, the judge said:

"You should, however, keep in mind that at all times it's the defendant's state of mind which is at issue here, and in order to convict the defendant, you are required to find beyond a reasonable doubt that he in fact had the intention and/or recklessness required for guilt."

The Supreme Court of Delaware affirmed Goddard's conviction over his contention that the instructions concerning the intoxication defense violated due process by relieving the state of its obligation to prove each element of the offense beyond a reasonable doubt. The court found that the charge met federal constitutional standards on the burden of proof articulated in *Patterson v. New York*, 432 U.S. 197, 97 S.Ct. 2319, 53 L.Ed.2d 281 (1977). *Goddard v. State*, 382 A.2d 238 (Del.1977). The habeas court, however, read the charge as placing the burden on the petitioner to negate intent, an essential element of first degree murder, counter to *Mullaney v. Wilbur*, 421 U.S. 684, 95 S.Ct. 1881, 44 L.Ed.2d 508 (1975). Nevertheless, the district judge refused to grant the writ, deciding that in light of the overwhelming evidence of the petitioner's guilt, the erroneous instruction was "harmless beyond a reasonable doubt."

The issue in this case is whether Delaware was constitutionally prohibited from requiring the petitioner to prove the affirmative defense of voluntary intoxication by a preponderance of the evidence. Phrased differently, once the defense of intoxication had been raised, was the prosecutor required to prove its absence? In charging the jury on intoxication, the trial judge faithfully followed the provisions of the Delaware Criminal Code, so necessarily

2. The instruction on intoxication reads as follows:

"As to the charges of Murder in the First Degree to which the law requires specific intent, the defendant Goddard has asserted as an affirmative defense that the defendant was intoxicated at the time of the offense. Under the *Criminal Code, voluntary intoxication is* available as a defense only if it negatives the elements of intention required for the commission of the offense. In order to establish the affirmative defense of voluntary intoxication, it's necessary for the defendant to satisfy you by a preponderance of the evidence of the following propositions:

One, at the time of the killing the defendant was voluntarily intoxicated. Intoxication means the inability resulting from the introduction of substances into the body to exercise control over one's mental faculties. Voluntary intoxication means intoxication caused by substances which a person know-

ingly introduces into his body, the tendency of which is to cause intoxication he knows or should know.

Two, the defendant's intoxication must have been such as to make it impossible for him to have the state of mind required for commission of the offense. In this case the relevant state of mind was the intent to kill the alleged victim.

If you find that the affirmative defense of voluntary intoxication has been established by a preponderance of the evidence, you should find the defendant Goddard [not] guilty of the crime of Murder in the First Degree. You should then go on to consider whether the defendant is guilty of Murder in the Second Degree or of a form of Manslaughter under circumstances of which the law does not require the existence of the state of mind of intent to kill." (The word "not" was inadvertently left out of the transcript by the court reporter.)

we must pass upon their validity. Resolution of the question requires a brief review of the relevant statutes and a consideration of several leading cases on the burden of proof in criminal trials, including *In re Winship*, 397 U.S. 358, 90 S.Ct. 1068, 25 L.Ed.2d 368 (1970); *Mullaney v. Wilbur, supra*; and *Patterson v. New York, supra*. We turn first to the statutory framework.

## I.

At the time Goddard committed his crime, § 421 of the Delaware Criminal Code recognized the defense of voluntary intoxication "if it negative[d] the element of intentional or intentionally." 59 Del. Laws c. 203, § 37 (1973), *amending* 58 Del. Laws c. 497, § 1 (1972).[3] Section 304 of the Code provides that when an "affirmative" defense is raised, the defendant must establish it by a preponderance of the evidence. The burden of proof on the state in every criminal case is governed by § 301(b). It provides: "No person may be convicted of an offense unless each element of the offense is proved beyond a reasonable doubt." Del. Code Ann. tit. 11, § 301(b) (Michie 1979).

The petitioner was charged with first degree murder, "intentionally caus[ing] the death of another person." Del. Code Ann. tit. 11, § 636(a)(1) (Michie 1979). Although the defense of voluntary intoxication was available to counter the element of "intentionally," it could not negative the mental state of recklessness inherent in lesser degrees of homicide where the intoxicant's effect was merely to make the accused unaware that he had created a risk sufficient to satisfy that standard. *See* note 3 *supra*;

11 Del. Code Ann. tit. 11, § 231(c) (Michie 1979) (definition of recklessness); Model Penal Code § 2.08, comment 3, at 9 (Tent. Draft No. 9, 1959). Thus, under the Criminal Code, voluntary intoxication only served to make what otherwise would have constituted first degree murder a reduced grade of homicide, where recklessness or some less culpable state of mind is all that is required. *See* Del. Code Ann. tit. 11, §§ 231 (definitions regarding state of mind), 635 (second degree murder), 632 (manslaughter), and 631 (criminally negligent homicide) (Michie 1979). Against this statutory background, we must consider the relevant Supreme Court pronouncements on the burden of proof.

## II.

In *In re Winship, supra*, the Supreme Court held that "the Due Process Clause protects the accused against conviction except upon proof beyond a reasonable doubt of every fact necessary to constitute the crime." 397 U.S. at 364, 90 S.Ct. at 1073. Five years later, in *Mullaney v. Wilbur, supra*, the Court reviewed the habeas corpus appeal of a defendant convicted of first degree murder by the Maine courts. The trial court had charged that malice aforethought was an essential and indispensable element of murder and was inconsistent with the defense of heat of passion on sudden provocation. The jury was further instructed that if the prosecution established that the homicide was both intentional and unlawful, malice aforethought was to be conclusively implied unless the defendant proved by a fair preponderance of the evi-

---

**3.** The pertinent section read as follows:

"(1) Except as provided in subsection (2) of this section, voluntary intoxication is an affirmative defense in a prosecution for a criminal offense only if it negatives the element of intentional or intentionally.

(2) When recklessness is an element of an offense, and the defendant, as a result of voluntary intoxication, is unaware of a risk, his unawareness does not negative the mental state of recklessness if he would have been aware of the risk had he not been intoxicated."

Delaware abolished the defense in 1976 after the commission of the crime prosecuted in this case. 60 Del. Laws c.680, § 1 (1976) (codified at Del.Code Ann. tit. 11, § 421 (Michie 1979)); *see Pendry v. State*, 367 A.2d 627, 631 n.6 (Del. 1976).

Although the defense was primarily directed toward the use of alcohol, it also was available to one who could show that he was under the influence of drugs. *See* Del. Code Ann. tit. 11, § 424 (Michie 1979); Delaware Criminal Code With Commentary, Commentary on §§ 421, 424 (1973). *See generally* Model Penal Code § 2.08, comments 1–8 (Tent. Draft No. 9, 1959).

dence that he acted in the heat of passion on sudden provocation.

Noting that malice aforethought distinguished murder from lesser degrees of felonious homicide, *Mullaney* held that by placing the burden on the defendant to establish the converse, the state had violated his right to due process. In the Court's judgment, this persuasion-shifting arrangement relieved the prosecution of its constitutional obligation to establish every fact critical to a greater degree of culpability. *See* 421 U.S. at 696–701, 95 S.Ct. at 1888–1890. In a concurring opinion, Justice Rehnquist wrote that he saw no inconsistency between the result reached by the majority and the Court's opinion in *Leland v. Oregon,* 343 U.S. 790, 72 S.Ct. 1002, 96 L.Ed. 1302 (1952), where a statute requiring the defendant in a murder case to prove insanity beyond a reasonable doubt survived a constitutional challenge. 421 U.S. at 704–06, 95 S.Ct. at 1892–93.

A year after *Mullaney* was decided, the Court was confronted with a Delaware statute that placed the burden of proving insanity in a criminal case on the defendant. In *Rivera v. Delaware,* 429 U.S. 877, 97 S.Ct. 226, 50 L.Ed.2d 160 (1976), the Court dismissed for want of a substantial federal question an appeal from the Delaware Supreme Court affirming a conviction in a trial where the defendant was required to prove insanity. Thus *Leland* remained viable despite *Mullaney.*

The next development was *Patterson v. New York, supra,* a murder case in which the Court rebuffed a constitutional attack on a state statute that required the defendant to shoulder the burden of proving the defense of extreme emotional disturbance. The trial judge charged that the state had to establish beyond a reasonable doubt that the defendant "intended . . . to kill either the victim himself or some other human being" and repeated that it was the prosecution's burden "to prove [defendant's]

guilt, and to prove that he intended to kill in this instance beyond a reasonable doubt." 432 U.S. at 199–200, 97 S.Ct. at 2321–22. The jury also was instructed that the defendant had the burden of proving his affirmative defense by a preponderance of the evidence. *Id.* at 200, 97 S.Ct. at 2321.

In reviewing the New York statute, the Court noted that "[t]he death, the intent to kill, and causation are the facts the state is required to prove beyond a reasonable doubt . . . . No further facts are either presumed or inferred in order to constitute the crime." *Id.* at 205–06, 97 S.Ct. at 2324. The Court went on to say that if an intentional killing were shown, the defendant would be considered a murderer unless he demonstrated mitigating circumstances. The affirmative defense of extreme emotional disturbance in these circumstances did not serve to negative any facts of the crime that the state had to prove in order to convict. The majority refused to reconsider *Leland* and *Rivera. Mullaney* was explained as requiring a state to prove every ingredient of an offense beyond a reasonable doubt, "and . . . it may not shift the burden of proof to the defendant by presuming that ingredient upon proof of the other elements of the offense . . . . It was unnecessary to go further in *Mullaney." Id.* at 215, 97 S.Ct. at 2329.

At the very least, *Mullaney* has been substantially narrowed by *Patterson. See id.* at 221–25, 97 S.Ct. at 2332–34 (Powell, J., dissenting). On the same day that *Patterson* was decided, the Court, in *Hankerson v. North Carolina,* 432 U.S. 233, 97 S.Ct. 2339, 53 L.Ed.2d 306 (1977), held that *Mullaney* was retroactive. Significantly, however, Justice Blackmun and the Chief Justice held out an invitation to the state court to reexamine in light of *Patterson* its position that placing the burden of proving self-defense on the accused violated due process. *Id.* at 245, 97 S.Ct. at 2346.[4]

---

4. *Winship, Mullaney,* and *Patterson* have generated a substantial body of scholarly commentary, including: McCormick on Evidence § 341, 101–04 (2d ed. E. Cleary Supp. 1978); Allen,

The Restoration of *In Re Winship*: A Comment on Burdens of Persuasion In Criminal Cases After *Patterson v. New York,* 76 Mich.L. Rev. 30 (1977); Jeffries & Stephan, Defenses,

### III.

There are striking similarities between *Patterson* and the case at bar. Here, the state had the burden to prove all the elements of the crime including intent. There was no presumption operating to establish one fact by proof of another as *Patterson* found present in *Mullaney*. The defense of intoxication is premised on the same general theory as extreme emotional disturbance, that is, an impairment of the intellectual process brought on here by drugs and in *Patterson* by an emotional upheaval. Both to some extent may be loosely characterized as a temporary degree of insanity, W. LaFave & A. Scott, Handbook on Criminal Law § 45, at 342 (1972),[5] although under the Delaware Code insanity is a complete defense. Del. Code Ann. tit. 11, § 401 (Michie 1979). Voluntary intoxication, if it eliminated the intent to kill, reduced the severity of the crime, but it did not excuse the defendant from the consequences of other gradations of homicide. In that respect, the defense is similar to that of extreme

emotional disturbance which, if established, would reduce the crime from first degree murder to a lesser degree of homicide.

At first glance, the statute, former § 421, appears to implicate *Patterson's* prohibition against requiring a criminal defendant to disprove any facts of the crime that the state had to establish in order to convict. By its terms, the defense seems to be available only when it negatives an element of the offense. But on reflection, it is apparent that as the statute was applied to Goddard, it did not conflict with *Patterson.*

Historically a majority of the states have placed the burden of proving the defense of voluntary intoxication on the defendant in a criminal case.[6] Indeed, before the adoption of the Delaware Criminal Code, that state so allocated the burden as a matter of common law. *Fisher v. State,* 4 Storey 542, 546–47, 54 Del. 542, 546–47, 182 A.2d 333, 335 (1962); *State v. Kupis,* 7 W.W.Harr. 27, 31, 37 Del. 27, 31, 179 A. 640,

Presumptions, and Burden of Proof in the Criminal Law, 88 Yale L.J. 1325 (1979); Underwood, The Thumb on the Scales of Justice: Burdens of Persuasion in Criminal Cases, 86 Yale L.J. 1299 (1977); Note, Criminal Procedure—Due Process And The Burden Of Proof, 1978 Ann.Survey Am.L. 17; The Supreme Court, 1976 Term, 91 Harv.L.Rev. 94 (1977); Note, Due Process and the Insanity Defense: The Supreme Court's Retreat from *Winship* and *Mullaney,* 54 Ind.L.J. 95 (1978); Note, *Patterson v. New York*: Defendant Must Carry Burden of Proof in Affirmative Defense, 3 J.Crim.Def. 289 (1977); Note, Criminal Law: Affirmative Defenses in Criminal Trials—What Are the Limits After *Patterson v. New York?,* 31 Okla.L.Rev. 411 (1978); Comment, The Burden Of Proof For Extreme Emotional Disturbance And Insanity: The Deterioration Of Due Process, 52 Temp.L.Q. 79 (1979); Note, Burdens Of Persuasion In Criminal Proceedings: The Reasonable Doubt Standard After *Patterson v. New York,* 31 U.Fla.L.Rev. 385 (1979). Many of these commentators argue that indeed there is no real distinction between the underlying statutes and that *Patterson* simply overrules *Mullaney. See, e. g.,* McCormick on Evidence, *supra*; Allen, *supra*; Note, J.Crim. Def., *supra*; and Note, Okla.L.Rev., *supra.*

5. In discussing intoxication as a defense, Blackstone wrote:
"as to artificial, voluntarily contracted madness, by *drunkenness* or intoxication, which,

depriving men of their reason, puts them in a temporary frenzy; our law looks upon this as an aggravation of the offense, rather than as an excuse for criminal misbehavior." 4 W. Blackstone, Commentaries *25–26. The accuracy of the aggravation approach has been questioned, but it appears to be generally accepted that at common law intoxication was not a defense. Hall, Intoxication And Criminal Responsibility, 57 Harv.L.Rev. 1045, 1046 (1944).

6. Hall, *supra* note 5, at 1048. *E. g., State v. Quigley,* 135 Me. 435, 438–39, 199 A. 269, 271–72 (1938); *State v. Kelly,* 216 N.C. 627, 648–50, 6 S.E.2d 533, 545–46 (1940); *State v. Tune,* 17 N.J. 100, 114–15, 110 A.2d 99, 107 (1954); *cert. denied,* 349 U.S. 907, 75 S.Ct. 584, 99 L.Ed. 1243 (1955); *State v. French,* 171 Ohio St. 501, 502–05, 172 N.E.2d 613, 614–16, *cert. denied,* 366 U.S. 973, 81 S.Ct. 1941, 6 L.Ed.2d 1263 (1961). The recent trend is to hold that once the defendant has met the burden of going forward with evidence of voluntary intoxication, the prosecution must persuade the trier of fact that the defendant was not so intoxicated that he is entitled to the defense. McCormick on Evidence § 341, at 800–02 (2d ed. E. Cleary 1972); *see* W. LaFave & A. Scott, *supra* § 45, at 351. *E. g., People v. Evrard,* 55 Ill.App.2d 270, 273, 204 N.E.2d 777, 778–79 (1965) (by statute); *State v. Templeton,* 258 N.W.2d 380, 382–83 (Iowa 1977); *Commonwealth v. Rose,* 457 Pa. 380, 386–90, 321 A.2d 880, 883–85 (1974).

641 (1935). In *Patterson*, the Court held, "Proof of the nonexistence of all affirmative defenses has never been constitutionally required . . . ." 432 U.S. at 210, 97 S.Ct. at 2327. It stated:

> "Long before *Winship*, the universal rule in this country was that the prosecution must prove guilt beyond a reasonable doubt. At the same time, the long-accepted rule was that it was constitutionally permissible to provide that various affirmative defenses were to be proved by the defendant. This did not lead to such abuses or to such widespread redefinition of crime and reduction of the prosecution's burden that a new constitutional rule was required. This was not the problem to which *Winship* was addressed. Nor does the fact that a majority of the States have now assumed the burden of disproving affirmative defenses—for whatever reasons—mean that those States that strike a different balance are in violation of the Constitution."

*Id.* at 211, 97 S.Ct. at 2327 (footnotes omitted). The Court also commented approvingly on the statement by Chief Judge Breitel of the New York Court of Appeals that to discourage the use of affirmative defenses may be misguided since they may be used to ameliorate the statutory scheme for punishment of crime rather than foster rigidity. *Id.* at 211 n.13, 97 S.Ct. at 2327 n.13.

That factor is present here because Delaware provided for the affirmative defense of voluntary intoxication, although it was not required either constitutionally or at common law.[7] In an attempt to limit the exposure of the defendants to conviction for a crime requiring specific intent, however, the legislature provided for intoxication as a mitigating factor. A gratuitous defense having been provided, it is not constitutionally perverse for the state to insist that the defendant assume the responsibility of proving his contention by a preponderance of the evidence.[8] As the *Patterson* Court noted, statutes requiring proof of certain affirmative defenses fall within an area in which the legislature has room to maneuver. And as the holding implies, such matters as heat of passion and voluntary intoxication are in this category.

Moreover, since the Court has held that the defense may be required to establish insanity, *Rivera v. State, supra; Leland v. Oregon, supra*, it follows that a state may impose the burden of proof upon the accused when the effect upon rational behavior may be less severe. Indeed, in the case of voluntary intoxication, the state has displayed an even greater degree of leniency because the impaired intellectual functioning was caused by the defendant's own voluntary act, unlike deficiencies caused by forces beyond one's control.

Examining the manner in which this defense was presented to the jury further convinces us that Goddard suffered no harm. The trial judge instructed the jury on numerous occasions that the state was required to prove beyond a reasonable doubt all the elements of first degree murder including the intent to kill. There can be no doubt that reasonable jurors would have understood from the instructions as a whole that if the state failed to prove the requisite intent, they necessarily had to acquit the defendant of first degree murder. *See Sandstrom v. Montana*, 442 U.S. 510, 514–19, 99 S.Ct. 2450, 61 L.Ed.2d 39 (1979); *Cupp v. Naughten*, 414 U.S. 141, 146–47, 94 S.Ct. 396, 400, 38 L.Ed.2d 368 (1973).

---

7. Some states have held that voluntary intoxication is not a defense. *E. g., Dye v. State*, 220 Ga. 113, 115, 137 S.E.2d 465, 467 (1964); *State v. Cornwall*, 95 Idaho 680, 685, 518 P.2d 863, 868 (1974) (by statute); *State v. Richardson*, 495 S.W.2d 435, 440 (Mo.1973) (en banc); *DuBois v. State*, 164 Tex.Crim. 557, 562, 301 S.W. 97, 101 (1957) (by statute), *cert. denied*, 356 U.S. 921, 78 S.Ct. 705, 2 L.Ed.2d 717 (1958); *State v. Stacy*, 104 Vt. 379, 407, 160 A. 257, 269 (1932). *See* Annot., 8 A.L.R.3d 1236, 1240–42

(1966). *Cf. Chittum v. Commonwealth*, 211 Va. 12, 17–18, 174 S.E.2d 779, 782–83 (1970) (voluntary intoxication excuses no crime but may reduce murder from first to second degree).

8. See the discussion of the "greater includes the lesser" theory in Jeffries & Stephan, Defenses, Presumptions and the Burden of Proof in Criminal Law, 88 Yale L.J. 1325 (1979).

An analysis of the evidentiary bases of the prosecution's case and of the defense demonstrates the practical application of the charge. It must be remembered that a jury may be required to determine the existence of an element of the crime—that is, an "ultimate" or "elemental" fact—from the proof of one or more "evidentiary" or "basic" facts. *County Court of Ulster County v. Allen*, 442 U.S. 140, 156, 99 S.Ct. 2213, 60 L.Ed.2d 777 (1979). In this case the evidentiary facts leading to the ultimate fact of intent to kill differ from the evidentiary facts that Goddard sought to use in establishing his defense. The jury could infer criminal intent from the actions of the defendant in planning the murder, tying up the victim, and deliberately strangling her. None of these actions would likely have been the product of recklessness, inadvertence, or mistake. Thus, the prosecution had produced all the evidence necessary from which the jury could find the presence of an intent to kill, and at that point the state's case was complete. It did not rely upon a presumption that the defendant was called upon to rebut.

The petitioner's testimony on intoxication did not challenge the evidentiary facts of the prosecution's case. Thus, the burden to convince the jury of the basic facts relied on to establish the ultimate fact of intent to kill never was taken from the state, and, reading the charge as a whole, there is no possibility that the jury perceived the burden to be otherwise. In this sense, the evil that the *Patterson* Court found inherent in *Mullaney*—requiring the defendant to negative the prosecution's case—is not present. Only after determining that the prosecution had established its case on first degree murder did the jury have occasion to consider whether the intoxication had been established. This affirmative defense therefore did not lessen the state's burden but added a separate element to the trial so that the defendant would have an opportunity for mitigation.

The statutory scheme and the instructions given to the jury did not unconstitutionally shift any part of the state's burden to the petitioner, and, accordingly, the district court properly denied the petition for a writ of habeas corpus, albeit on a different ground. The order will be affirmed.