Merlin C. LONG, Appellant,

v.

Lou V. BREWER, Appellee.

No. 81–1530.

United States Court of Appeals,
Eighth Circuit.

Submitted Nov. 13, 1981.

Decided Jan. 8, 1982.

Rehearing and Rehearing En Banc
Denied March 9, 1982.

Kathryn Delafield (Student), Ronald J.
Allen (argued), Thomas J. Doyle, Iowa City,
Iowa, for appellant.

Thomas J. Miller, Atty. Gen. of Iowa, Thomas D. McGrane, Asst. Atty. Gen. (argued), Des Moines, Iowa, for appellee.

Before HENLEY and ARNOLD, Circuit Judges, and HARRIS,* Senior District Judge.

ARNOLD, Circuit Judge.

Merlin Long was convicted of first-degree murder in 1964 after a plea of guilty in the District Court of Buena Vista County, Iowa. There was no appeal. Then, in 1973, Long applied for post-conviction relief in the Iowa District Court, which was denied. The denial was affirmed on appeal to the Supreme Court of Iowa. *Long v. Brewer*, 253 N.W.2d 549 (Iowa 1977). Long then filed a petition for habeas corpus in the United States District Court for the Southern District of Iowa. His request for an evidentiary hearing was denied, and one of his grounds for relief was rejected, by interlocutory orders. With leave of the District Court Long filed an amended petition on April 10, 1981, but this too was dismissed by the District Court.[1] This appeal followed.

Long claims that he is being held in violation of the Constitution for three reasons: (1) because he was denied the effective assistance of counsel at and before his hearing on the degree of guilt; (2) because his guilty plea was neither voluntarily nor intelligently made; and (3) because the Iowa law on the defense of intoxication in effect at the time of his conviction was unconstitutional because it required him to prove by a preponderance of the evidence that he was so far intoxicated as to be incapable of forming the specific intent to commit first-degree murder. We affirm the decision of the District Court for reasons that will be separately set out with respect to each of these contentions.

---

* The Hon. Oren Harris, Senior United States District Judge for the Eastern and Western Districts of Arkansas, sitting by designation.

1. The Hon. William C. Stuart, Chief Judge, United States District Court for the Southern District of Iowa.

2. Long was prosecuted under §§ 690.1, 690.2, and 690.3 (1962) of the Iowa Code as it was then in force (now repealed). This particular

## I.

Petitioner Long was arrested at approximately 12:15 a. m. on June 24, 1964, in Dickinson County, Iowa, as a suspect in the murder of Bonnie Jean Johnson. Ms. Johnson's corpse had been discovered the previous day floating in a river about two miles southeast of Peterson in Buena Vista County. Within an hour petitioner was being questioned in a city council room adjacent to the Police Department of Spirit Lake, in Dickinson County. Exactly what occurred during the next several hours of interrogation is, of course, in dispute. But it is clear that sometime during the interrogation petitioner confessed to the crime and gave a detailed statement recounting the events leading up to the crime and the particulars of the crime itself.

On July 20, 1964, Long was arraigned on a first-degree murder charge, and counsel, William Perry, was appointed to represent him. Perry entered a plea of not guilty on Long's behalf. Soon after the arraignment Perry obtained a copy of Long's confession and a psychiatric evaluation conducted at the State Psychopathic Hospital in Iowa City. According to the evaluation Long was able to distinguish between right and wrong and able to assist in the preparation of his defense. Long was also described as having an intense sexual deviation that would have caused him to ignore the consequences of his acts at the time of the murder.

Thereafter, on September 4, 1964, Long appeared in court with counsel and personally entered a plea of guilty to an open charge of murder.[2] On September 8 and 14, hearings were held on the degree of

statutory scheme provided for only one crime called murder—the killing of "any human being with malice aforethought, either express or implied . . . ." *State v. Nutter*, 248 Iowa 772, 774, 81 N.W.2d 20, 21 (1957). The degrees of murder, first and second, were not considered distinct offenses, but only gradations of the crime for the purpose of varied punishment according to the particular circumstances. *Ibid.*

guilt and sentencing, at which counsel Perry argued that Long should be found guilty of no more than second-degree murder. The court found Long guilty of first-degree murder and sentenced him to life imprisonment.

## II.

▮▮▮ Petitioner's first argument is that he was denied effective assistance of counsel during and before his degree-of-guilt hearing in the Iowa District Court. At the outset it is important to note that the petitioner bears a heavy burden in attempting to prove ineffective assistance of counsel. The elements of this burden were laid out in *DuPree v. United States*, 606 F.2d 829, 830–31 (8th Cir. 1979) (per curiam), *cert. denied*, 445 U.S. 919, 100 S.Ct. 1284, 63 L.Ed.2d 605 (1980):

> The standard for determining the adequacy of counsel is whether the trial counsel exercised "the customary skills and diligence that a reasonably competent attorney would perform under similar circumstances." *United States v. Easter*, 539 F.2d 663, 666 (8th Cir. 1976), *cert. denied*, 434 U.S. 844, 98 S.Ct. 145, 54 L.Ed.2d 109 (1977). There is a presumption that counsel has rendered effective assistance. *Thomas v. Wyrick*, 535 F.2d 407, 413 (8th Cir.), *cert. denied*, 429 U.S. 868, 97 S.Ct. 178, 50 L.Ed.2d 148 (1976). To overcome the presumption, appellant must show that: (1) there was a failure to perform an essential duty owned [sic] by the defense attorney to his client; and (2) that the failure prejudiced the defense. *McQueen v. Swenson*, 498 F.2d 207, 218 (8th Cir. 1974).

With these legal standards in mind we now turn to the specifics of petitioner's ineffective-assistance-of-counsel argument.

Before the degree-of-guilt hearing Long's counsel is said to have exercised less than the customary skills of a reasonably competent attorney when he (1) failed to consider, or advise Long, of the possibility of suppressing Long's confession,[3] and (2) failed to advise Long as to the relevance of the defense of diminished responsibility, based on Long's alleged intoxication at the time of the crime.

▮ In the first instance it is simply inaccurate to say that petitioner's counsel failed to consider the possibility of suppressing Long's confession. The record shows that Mr. Perry considered suppression, but it was his judgment that it would do little to advance the interests of his client. This judgment was based, for the most part, on counsel's knowledge of the surrounding facts and circumstances. In particular, counsel knew that the prosecution had more than a considerable amount of evidence, both physical and circumstantial, that linked his client with the killing.[4] With the aid of hindsight one can always second-guess the tactical judgments made by counsel, but it by no means follows that constitutional rights were infringed. The decision not to press for suppression of Long's incriminating statements seems to us to be clearly within the standard of a reasonably competent attorney, especially since there is no reason to believe that a motion to suppress would have succeeded.

**3.** Counsel's failure to consider suppression is said to be based, in part, on counsel's ignorance of the then-recently decided Supreme Court case of *Escobedo v. Illinois*, 378 U.S. 478, 84 S.Ct. 1758, 12 L.Ed.2d 977 (1964). *Escobedo*, however, had no application to the facts in this case. In *Escobedo* a confession was ruled inadmissible where it was elicited through interrogation that continued after the suspect repeatedly requested to consult with his lawyer. Any questions as to broader implications of *Escobedo* were laid to rest in *Johnson v. New Jersey*, 384 U.S. 719, 733–34, 86 S.Ct. 1772, 1781, 16 L.Ed.2d 882 (1966). Long made no

requests to consult with a lawyer during his interrogation. From all indications, moreover, Long's confession was freely and voluntarily given. He certainly gave no contrary indications to his counsel.

**4.** In summary, Long was known in the area, as was the decedent; the decedent was last seen alive with a person fitting Long's description getting into a green Volkswagen like the one owned by Long; Long's fishing tackle was found at the scene of the killing along with other physical evidence that linked him to the crime.

■ Petitioner also argues that counsel failed to advise him of the possible applicability of the defense of diminished responsibility due to intoxication. Accepting this as true, we are still unwilling to say that petitioner was afforded ineffective assistance of counsel. The fact that Long was not advised of every conceivable defense or favorable argument that might be posited does not render the assistance of counsel ineffective, just as it does not render his plea involuntary or uninformed. See *Tollett v. Henderson*, 411 U.S. 258, 267, 93 S.Ct. 1602, 1608, 36 L.Ed.2d 235 (1973). Often the main contribution of counsel "involves highly practical considerations as well as specialized knowledge of the law." *Id.* at 268, 93 S.Ct. at 1608. Practical considerations such as the strength of the state's case, the likelihood of a lesser sentence, and the burdens of a trial were communicated to the defendant. Perry was knowledgeable of the facts surrounding the case, he advised the defendant of the elements of the crime with which he was charged, and he discussed with the defendant the possibility of asserting the defense of insanity and the probability of success of such a tactic. In sum, our review of the record convinces us that petitioner's counsel was prepared and demonstrated considerable skill and judgment.

We turn now to petitioner's claim that counsel's assistance at the degree-of-guilt hearing was ineffective because he failed to raise the diminished-responsibility defense. Our review of the record indicates only that counsel Perry failed to argue the defense specifically during his closing statement to the court. There was testimony throughout the hearing concerning Long's intoxication and its likely effect on his mental state. Long's confession, in which he stated that he had been drinking quite a bit, was placed in the record at the degree-of-guilt hearing. Sheriff Don Barrels also testified as to Long's claim that he had been drinking, and as to the beer cans that were found at the scene of the killing. Transcript of the degree-of-guilt hearing, pp. 43–45. And finally, during cross-examination by Long's counsel, Dr. Lloyd Spencer, the State psy-

chiatrist, testified that Long was under the influence of alcohol at the time of the killing and that "this certainly was a factor" in Long's inability to control his actions. *Id.* at 27.

■ Thus, we are not presented with a situation where there was no evidence of Long's intoxication before the court, or a situation where his counsel made no effort to bring such evidence to the court's attention. This is a case, in our view, where "there has been [no] serious incompetency, inefficiency, or inattention of counsel—behavior of counsel falling measurably below that which might be expected from an ordinary fallible lawyer ...." *United States v. Decoster*, 624 F.2d 196, 206 (D.C.Cir.1979) (en banc) (plurality opinion), quoting *Commonwealth v. Saferian*, 366 Mass. 89, 96, 315 N.E.2d 878, 883 (1974). Moreover, even were we to assume incompetence here, the petitioner has made no meaningful showing of prejudice—that he was "likely deprived ... of an otherwise available, substantial ground of defense." *Ibid.* The evidence of Long's intoxication was before the court, and we must assume that the court was aware of the availability of the defense. The chances that the outcome would have been different if only Long's counsel had argued the specifics of the defense in his closing statement are remote, to say the least. Accordingly, petitioner's argument of ineffective assistance of counsel must fail.

## II.

■ Petitioner's second argument for reversal—that the District Court erred in concluding that Long's plea was voluntary and intelligent—is foreclosed by our rejection of his claim of ineffective assistance of counsel. This is so because it is the claimed ineffective assistance of counsel that petitioner contends rendered his guilty plea involuntary and unintelligent. In order to invalidate a guilty plea the petitioner must show "gross error on the part of counsel when he recommended that [he] plead guilty instead of going to trial." *McMann*

*v. Richardson,* 397 U.S. 759, 772, 90 S.Ct. 1441, 1449, 25 L.Ed.2d 763 (1970). No such egregious mistake has been shown here.

## III:

Petitioner's final argument for reversal is that the Iowa law on the intoxication defense in effect at the time of his conviction was unconstitutional because it required him to prove by a preponderance of the evidence that he was so far intoxicated as to be incapable of forming the requisite criminal intent to commit the crime of first-degree murder. This argument turns on two Supreme Court cases, *Mullaney v. Wilbur,* 421 U.S. 684, 95 S.Ct. 1881, 44 L.Ed.2d 508 (1975), and *Patterson v. New York,* 432 U.S. 197, 97 S.Ct. 2319, 53 L.Ed.2d 281 (1977).

In *Wilbur* the Court was called upon to decide the constitutional validity of a Maine statute which required "a defendant charged with murder to prove that he acted 'in the heat of passion on sudden provocation' in order to reduce the homicide to manslaughter." 421 U.S. at 684–85, 95 S.Ct. at 1883. Under the law of Maine, if the prosecution proved beyond a reasonable doubt that the homicide was both intentional and unlawful, the existence of malice aforethought was conclusively presumed. 421 U.S. at 686, 95 S.Ct. at 1883. This presumption could be rebutted only by the defendant's showing by a "fair preponderance of the evidence that he acted in the heat of passion on sudden provocation."[5] *Ibid.* The cumulative effect of the conclusive presumption of malice aforethought and the defendant's burden of rebuttal was viewed by the Court as "affirmatively shift[ing]" to the defendant the burden of proving a critical fact in dispute. 421 U.S. at 701, 95 S.Ct. at 1890. This shifting was directly contrary to the rule of *In Re Winship,* 397 U.S. 358, 90 S.Ct. 1068, 25 L.Ed.2d 368 (1970), that the Due Process Clause requires that the accused be convicted only

where the state proves "beyond a reasonable doubt . . . every fact necessary to constitute the crime."[6] *Id.* at 364, 90 S.Ct. at 1072.

Two years later in *Patterson v. New York, supra,* the Court examined a second-degree-murder statute which required the state to prove only an intentional killing to obtain a conviction, but left to the defendant the burden of proving that he "acted under the influence of extreme emotional disturbance for which there was a reasonable explanation," 432 U.S. at 206, 97 S.Ct. at 2324, in order to reduce the crime to manslaughter. The Court noted that the New York requirement followed the pattern of many states' law on the defense of insanity. This approach in the context of insanity is not offensive to the Due Process Clause, *Rivera v. Delaware,* 429 U.S. 877, 97 S.Ct. 226, 50 L.Ed.2d 160 (1976) (mem.); *Leland v. Oregon,* 343 U.S. 790, 72 S.Ct. 1002, 96 L.Ed. 1302 (1952), and the New York law was upheld.

■ We think the Iowa law questioned here is closer to this pattern than to the Maine statute struck down in *Mullaney.* Long's plea of guilty to the open charge of murder relieved the state of the burden of proving a killing of a "human being with malice aforethought, either express or implied." Iowa Code § 690.1 (1962). The state, however, retained the burden of proving beyond a reasonable doubt the various elements that constitute first-degree murder. Iowa law, for the purposes of our case, defined first-degree murder as any willful, deliberate, and premeditated killing. Iowa Code § 690.2 (1962). The common-law rule in Iowa at the time of Long's conviction was that voluntary intoxication was not in itself an excuse for the commission of a crime, but it was admissible on issues of motive or intent. *State v. Booth,* 169 N.W.2d 869, 873–74 (Iowa 1969). A defendant who claimed that he lacked the specific intent because of voluntary intoxication

---

5. The state court in *Wilbur* emphasized the inherent inconsistency of malice aforethought and the heat of passion on sudden provocation. 421 U.S. at 686–87, 95 S.Ct. at 1883.

6. The holding of *Mullaney* was held to be retroactive in *Hankerson v. North Carolina,* 432 U.S. 233, 240–42, 97 S.Ct. 2339, 2343–2344, 53 L.Ed.2d 306 (1977).

had to prove his claim by a preponderance of the evidence.[7]  *State v. Hunley*, 167 N.W.2d 645, 649 (Iowa 1969).

In convicting Long under this scheme, Iowa required no more of the defendant than was required in *Patterson* or in *Leland* and *Rivera*.  In those cases, the facts constituting the crime were established beyond a reasonable doubt, "based on all the evidence *including* the evidence of the defendant's mental state."  *Patterson, supra*, 432 U.S. at 206, 97 S.Ct. at 2324 (emphasis ours).  Then the trier of fact was free to disregard the defendant's affirmative defense unless he was able to demonstrate it by a preponderance of the evidence.  The same was required here.  In addition, even if defendant's evidence of intoxication fell short of a preponderance, the state still had to prove specific intent beyond a reasonable doubt, and the defendant's evidence of intoxication was entitled to be taken into account on that issue.

The precise issue presented here—whether it is unconstitutional for a state to place the burden on the defendant to prove intoxication when he invokes it as a defense to a crime requiring specific intent—was addressed in *United States ex rel. Goddard v. Vaughn*, 614 F.2d 929 (3d Cir.), *cert. denied*, 449 U.S. 844, 101 S.Ct. 127, 66 L.Ed.2d 53 (1980).  There the Third Circuit said:

> There are striking similarities between *Patterson* and the case at bar.  Here, the state had the burden to prove all the elements of the crime including intent.  There was no presumption operating to establish one fact by proof of another as *Patterson* found present in *Mullaney*.  The defense of intoxication is premised on the same general theory as extreme emotional disturbance, that is, an impairment of the intellectual process brought on here by drugs and in *Patterson* by an emotional upheaval.  Both to some extent may be loosely characterized as a temporary degree of insanity, ... although under the Delaware Code insanity is a complete defense.  Del.Code Ann. tit. 11, § 401 (Michie 1979).  Voluntary intoxication, if it eliminated the intent to kill, reduced the severity of the crime, but it did not excuse the defendant from the consequences of other gradations of homicide.  In that respect, the defense is similar to that of extreme emotional disturbance which, if established, would reduce the crime from first degree murder to a lesser degree of homicide.

614 F.2d at 934 (citations and footnote omitted).

The court in *Goddard* found no deprivation of due process.  Nor do we in the case at bar.  Counsel for petitioner forthrightly attack *Goddard* as a mistaken decision and argue that it is illogical.  We too have some difficulty, in the abstract, with the distinction between requiring a defendant to disprove what was in substance an element of the crime, condemned in *Mullaney*, and requiring him to prove a defense (here intoxication) that may negative an element of the crime, permitted in *Patterson* and *Goddard*.  But *cf.* Rehnquist, J., concurring, in *Mullaney*, 421 U.S. at 704, 705–06, 95 S.Ct. at 1893 (differentiating *Mullaney* from *Leland*).  The distinction, nonetheless, seems clearly marked out by decisions of the Supreme Court.  We take some comfort in recalling Holmes's dictum that "The life of the law has not been logic; it has been experience."  Holmes, *The Common Law* 1 (1881).[8]

The judgment is affirmed.

---

**7.**  This is no longer the rule in Iowa.  Under *State v. Templeton*, 258 N.W.2d 380 (Iowa 1977), the law in Iowa now requires that the state negate the defendant's proof of voluntary intoxication affecting his ability to form the specific intent as an additional element of its proof.  The Supreme Court of Iowa did not decide whether this rule change was mandated by the Due Process Clause, and did not apply it retroactively.

**8.**  The Court in *Patterson*, moreover, said that it "did not intend *Mullaney*" to be "[c]arried to its logical extreme ...."  432 U.S. at 214–15 n.15, 97 S.Ct. at 2329, n.15.