422 A.2d 491

COMMONWEALTH of Pennsylvania,

v.

Clyde Eugene HILL, Appellant.

Supreme Court of Pennsylvania.

Submitted May 19, 1980.

Decided Oct. 31, 1980.

Raymond C. Hedger, Jr., Harrisburg, for appellant.

Richard A. Lewis, Dist. Atty., Marion E. MacIntyre, First Asst. Dist. Atty., for appellee.

EAGEN, C. J., and O'BRIEN, ROBERTS, NIX, LARSEN, FLAHERTY and KAUFFMAN, JJ.

## ORDER

PER CURIAM.

NIX, J., filed an Opinion in Support of Affirmance in which KAUFFMAN, J., joins.

LARSEN, J., concurs in that result.

ROBERTS, J., filed an Opinion in Support of Reversal in which O'BRIEN, C. J., and FLAHERTY, J., join.

The Court being evenly divided the Judgments of Sentence are affirmed.

## OPINION IN SUPPORT OF AFFIRMANCE

NIX, Justice.

Appellant, Clyde Eugene Hill, was convicted by a jury on October 18, 1973 of two counts of murder in the second degree.[1] We affirmed the judgments of sentence on direct appeal, *Commonwealth v. Hill*, 453 Pa. 349, 310 A.2d 88 (1973).[2] On May 9, 1977, Hill filed a *pro se* petition seeking

1. Now designated as murder of the third degree, *see* 18 Pa.C.S.A. § 2502(c) (1980–81 Supp.).

2. The only question before us in that appeal related to the propriety of the trial judge in sentencing Hill to consecutive ten to twenty year terms of imprisonment.

post–conviction relief.[3] Counsel other than trial counsel was appointed and, after a hearing, Hill was granted permission to file post verdict motions *nunc pro tunc.* The court *en banc* denied these motions and Hill appealed to this Court pursuant to 42 Pa.C.S.A. § 722(1).[4] We transferred the case to the Special Transfer Docket of the Superior Court.[5] The Superior Court, sitting in a panel consisting of the late Mr. Justice Manderino, former President Judge Watkins and Judge Cirillo, affirmed the order of the court *en banc.*[6] The Superior Court panel noted that this Court had failed to reach agreement on the underlying question, *see, Commonwealth v. Ernst,* 476 Pa. 102, 381 A.2d 1245 (1977), and urged that we accept review of this appeal, which we did.

The factual predicate of today's case in not complex. At his trial in 1973 for murder, the issue of Hill's sanity was raised. The trial court instructed the jury that when a defendant asserts the defense of insanity, the *defendant* has the burden of proving insanity by a fair preponderance of the evidence. Hill's trial counsel did not object to this charge. It is conceded that the charge as given was in conformity with the law as it existed at that time. *See e. g., Commonwealth v. Zlatovich,* 440 Pa. 388, 393, 269 A.2d 469 (1970); *Commonwealth v. Vogel,* 440 Pa. 1, 9–10, 268 A.2d 89 (1970); *Commonwealth v. Woodhouse,* 401 Pa. 242, 248–49,

**3.** *See* Post–Conviction Hearing Act, Act of January 25, 1966, P.L. (1965) 1580, §§ 1 *et seq.,* 19 P.S. §§ 1180–1 *et seq.*

**4.** In the post conviction proceeding appellant challenged the effectiveness of his counsel. Although it is not clear in the record before us, the post conviction court apparently found some type of *Douglas* denial and permitted the filing of new post verdict motions. Thus the matter is again before us in a direct appeal posture.

**5.** The authority for this transfer can be found in Order of the Supreme Court of June 7, 1979 (No. 51, Supreme Court Rules Docket No. 1) which was promulgated "pursuant to the Constitution of Pennsylvania and Title 42 of the Pennsylvania Consolidated Statutes."

**6.** The Superior Court's order and accompanying memorandum opinion were filed subsequent to Justice Manderino's death with a notation that the decision in the case had been reached prior to his death.

164 A.2d 98 (1960); *Commonwealth v. Carluccetti*, 369 Pa. 190, 199, 85 A.2d 391, 395 (1952).

We subsequently changed the controlling law in *Commonwealth v. Demmitt*, 456 Pa. 475, 321 A.2d 627 (1974), and provided that where there is evidence in the case sufficient to raise the insanity issue, the *prosecution* must bear the burden of proving a defendant's sanity beyond a reasonable doubt. There is no doubt that under the *Demmitt* standard, the instructions given the jury at Hill's trial would now be deemed erroneous. In the *Ernst* case, all six members of the Court agreed that where a defendant tried prior to the decision in *Demmitt* had timely objected to such a charge, he should be given retroactive benefit of the *Demmitt* standard, where his direct appeal was heard after *Demmitt*, and awarded a new trial. The Court was evenly divided,[7] as to whether an appellant on direct appeal should be allowed to raise the question where a timely objection had not been interposed at trial.

The major thrust of the opinions in Support of Affirmance and in Support of Reversal in *Ernst*—and, indeed, the primary focus of the briefs presented to us in the present case—was directed to whether *Demmitt* was based on state evidentiary law or constitutional law, and whether the *Demmitt* ruling should be given retroactive effect.[8] After study we are now convinced that the true crux of the problem presented is the proper application of our strict requirement that litigants must timely preserve their objections to the actions of the trial court as a condition precedent to appellate review of those actions. The question of

7. Former Justice Pomeroy wrote an Opinion in Support of Affirmance in which Mr. Chief Justice Eagen joined, while the present writer concurred in the view that the judgment should be affirmed. Mr. Justice Roberts wrote an Opinion in Support of Reversal in which he was joined by Justices O'Brien and Manderino. Former Chief Justice Jones did not participate in the decision of the case.

8. The question as to whether the *Demmitt* rule had constitutional underpinnings was the most divisive issue in our *Ernst* decision. *Compare* 476 Pa. at 105–07, 381 A.2d 1245 (Opinion in Support of Affirmance), with *id.*, 476 Pa. at 112–15, 381 A.2d 1245 (Opinion in Support of Reversal).

retroactivity of the *Demmitt* rule was answered when it was decided that the objection could apply to trials before the file date of the opinion in *Demmitt.* *See e. g., Commonwealth v. Moyer,* 466 Pa. 464, 468, 353 A.2d 447, 449 (1976); *Commonwealth v. Williams,* 463 Pa. 370, 373 and n.1, 344 A.2d 877 (1975). The question as to whether we should foreclose an issue because of the absence of a timely objection is not one of retroactivity but rather one of issue preservation.[9] These are two mutually exclusive concepts. The determination of the retroactivity of a principle goes to the question of whether that principle is at issue in the case; *i. e.,* its applicability to the trial in question. The question of issue preservation assumes the applicability of the principle but precludes consideration of that question because of procedural defects in the raising of the claim. The failure to interpose an objection is clearly the type of factor which raises a question of issue preservation and it is not one of the concerns relevant in a determination as to the appropriateness of retroactive application.[10]

The basic principle of issue preservation, which was espoused in *Commonwealth v. Clair,* 458 Pa. 418, 326 A.2d 272 (1974), has been incorporated into the rules of procedure governing the actions before our courts.[11] Specifically, Criminal Procedure Rule 1119(b) regarding requests for instructions and the charge to the jury, states:

9. The failure of the opinion in support of affirmance in *Ernst* to clearly articulate this distinction occasioned this writer's decision not to join that opinion and to merely concur in the judgment that Mr. Ernst was not entitled to the relief he sought.

10. When considering the propriety of giving a new decision retroactive effect, the United States Supreme Court is guided by three criteria:
(a) the purpose to be served by the new standard,
(b) the extent of the reliance by law enforcement authorities on the old standards, and (c) the effect on the administration of justice of a retroactive application of the new standards. *Stovall v. Denno,* 388 U.S. 293, 297, 87 S.Ct. 1967, 1970, 18 L.Ed.2d 1199 (1967).

11. *See, e. g.,* Pa.R.A.P. 302; Pa.R.C.P. No. 227(b); Pa.R.Crim.P., Rules 306(e) & 1123(c).

(b) No portions of the charge nor omissions therefrom may be assigned as error, unless specific objections are made thereto before the jury retires to deliberate. Pa.R. Crim.P., Rule 1119(b).

This rule and the underlying principle it reflects has been upheld in a variety of contexts by this Court. *See e. g., Commonwealth v. Johnson*, 484 Pa. 545, 400 A.2d 583 (1979) (where, in prosecution for first–degree murder, defendant failed to object to trial court's original charge, defendant failed to preserve contention that error occurred when, following supplemental instructions, trial court refused his request that malice be defined for the jury); *Commonwealth v. James*, 483 Pa. 425, 397 A.2d 417 (1979) (when no objection to charge is taken, no error in charge may be raised as ground for review, and thus failure to instruct on involuntary manslaughter was not reached where defendant did not request such a charge and did not object to instructions at trial); *Commonwealth v. Kozek*, 479 Pa. 171, 387 A.2d 1278 (1978) (claims of error in the trial court's charge were not preserved because they were not the subject of an objection made before the jury retired); *Commonwealth v. Riggins*, 478 Pa. 222, 386 A.2d 520 (1978) (by failing to specifically object to that portion of charge concerning reasonable doubt standard for proving guilt, defendant failed to preserve his claim that the charge was misleading); *Commonwealth v. Smith*, 477 Pa. 505, 384 A.2d 1202 (1978) (where defendant failed to object to that portion of the charge telling jury that the death penalty was not involved, the issue was not preserved for purposes of appeal); *Commonwealth v. Culberson*, 467 Pa. 424, 358 A.2d 416 (1976) (defendant was precluded from raising on appeal the claim that the trial court erred in refusing his requested points for charge by failing to raise any objection); *Commonwealth v. O'Searo*, 466 Pa. 224, 352 A.2d 30 (1976) (appellate court was precluded from considering defendant's claim relating to the charge to the jury because no exception was taken to the charge and because the doctrine of basic and fundamental error has been abolished); *Commonwealth v. Dukes*, 460 Pa. 180, 331

A.2d 478 (1975) (claimed error of trial court in failing to charge jury on presumption of innocence could not be raised as a reason for a new trial and could not be entertained on appeal, where defendant failed to take exception to failure of court to so charge). Furthermore, this principle applies to the prosecutor as well as to the defendant. *See Commonwealth v. Brown*, 232 Pa.Super. 26, 332 A.2d 188 (1974) (if prosecutor does not object to jury charge in the trial court, the issue is not preserved on appeal).

■ The "sound jurisprudential considerations" underlying the policy "that an appellant may not assign as error a portion of a charge to a jury or an omission therefrom unless specific objection is made before the jury retires to deliberate [, ] . . . is reflective of the elementary principle that an appellate court does not review issues raised for the first time on appeal." *Commonwealth v. Ernst*, 476 Pa. at 107–08, 381 A.2d at 1246–47 (opinion in Support of Affirmance). In *Commonwealth v. Clair*, 458 Pa. 418, 326 A.2d 272 (1974), we set forth the factors compelling the strict enforcement of this policy:

'The proper functioning of our guilt–determining process neither requires nor assures a defendant an errorless trial. A defendant is, however, entitled to a fair trial free of such trial errors as his trial counsel timely sought to have corrected by calling them to the court's attention. Trial errors are made in the courtroom and it is there that the correction process should at least be *initiated.*'

'The defense may not successfully complain of trial errors for the first time *only* after the jury has returned a verdict of guilty, unless the errors were initially challenged at trial, and thereby preserved on appeal. The majority now–contrary to the whole course of modern trial procedure–encourages defense counsel to sit by silently without calling errors to the trial court's attention until *after* the guilty verdict is returned. In effect the majority's present approach places the appellate court in the role of a super–trial–defense counsel. Where counsel fails to call errors to the attention of the trial judge, the

majority ignores that deficiency and assumes the function of protecting those failures by granting relief despite the silence of counsel at trial.'

\*      \*      \*      \*      \*      \*

The requirement of a timely specific objection on the other hand insures that: 'First, appellate courts will not be required to expend time and energy receiving points on which no trial ruling has been made. Second, the trial court may promptly correct the asserted error. With the issue properly presented, the trial court is more likely to reach a satisfactory result thus obviating the need for appellate review on this issue. Or if a new trial is necessary, it may be granted by the trial court without subjecting both the litigants and the courts to the expense and delay inherent in appellate review. Third, appellate courts will be free to more expeditiously dispose of the issues properly preserved for appeal. Finally, the exception requirement will remove the advantage formerly enjoyed by the unprepared trial lawyer who looked to the appellate court to compensate for his trial omissions.' 458 Pa. at 420–21, 326 A.2d 272, *quoting Commonwealth v. Williams*, 432 Pa. 557, 569–70, 248 A.2d 301 (1968) (Roberts, J., dissenting), and 458 Pa. at 421–22, 326 A.2d 272, *quoting Dilliplaine v. Lehigh Valley Trust Co.*, 457 Pa. 255, 259, 322 A.2d 114 (1974).

No compelling reasons have been advanced to justify an exception to the requirement that the defendant must object to the jury charge in order to preserve it as an assignment of error. The Opinion in Support of Reversal in *Ernst* was concerned with the "fairness" of "depriving" a defendant of the benefit of a change in law. Such a concern misconstrues the true nature and purpose of the principle involved. The question is not whether it is "fair" to apply the former law in the instant case.[12] The question is whether sound juris-

12. We also find the "fairness" argument raised in context with a retrospective application analysis to be unpersuasive. Our cases have expressed the view that it is "fair" to allow a retrospective application of a change in law to a party who had objected to the prior law and preserved the issue for appeal. *See e. g., Common-*

prudential principles, created to ensure an orderly administration of justice, are to be circumvented.

■ In *Clair* we recognize that "any error that deprives a defendant of due process can . . . properly be remedied by a claim of ineffective assistance of counsel. *Commonwealth ex rel. Washington v. Maroney*, 427 Pa. 599, 235 A.2d 349 (1967)." 458 Pa. at 422, 326 A.2d at 274. The test to determine whether counsel's representation comported with constitutional mandate is whether the action or failure to act was designed to serve the best interest of the client. *Commonwealth v. Musi*, 486 Pa. 102, 404 A.2d 378 (1979) (citing many cases). Thus where the representation is deemed effective and the failure to raise the objection was designed to serve the interest of the client, it cannot be said that the client has been treated unfairly.

■ Finally, the distinction between issue preservation, i. e., the proper raising of a claim for review, must be distinguished from the waiver of a basic right. Where a waiver of a basic right is involved the record must clearly demonstrate "an intentional relinquishment or abandonment of a known right or privilege." *See e. g., Johnson v. Zerbst*, 304 U.S. 458, 464, 58 S.Ct. 1019, 1023, 82 L.Ed.2d 1461 (1938). This rule is applicable where there is a federal right involved, *Brady v. U. S.*, 397 U.S. 742, 748, 90 S.Ct. 1463, 1468, 25 L.Ed.2d 747 (1970); *Brookhart v. Janis*, 384 U.S. 1, 4, 86 S.Ct. 1245, 1246, 16 L.Ed.2d 314 (1966); *Adams v. U. S. ex rel. McCann*, 317 U.S. 269, 275, 63 S.Ct. 236, 240, 87 L.Ed. 268 (1942); *Johnson v. Zerbst, supra* 304 U.S. at 464, 58 S.Ct. at 1023, or a state right is at issue. *Commonwealth v. Coleman*, 477 Pa. 400, 383 A.2d 1268 (1978); *Commonwealth v. Norman*, 447 Pa. 217, 285 A.2d 523 appeal after remand, 456

wealth v. Moyer, 466 Pa. 464, 468, 353 A.2d 447, 449 (1976); *Commonwealth v. Williams*, 463 Pa. 370, 373 and n. 1, 344 A.2d 877 (1975). That party has put the court and opposing counsel on notice that he is unhappy with the present state of the law, and has given the court the benefit of his argument and thinking on the matter. Appellant Hill, on the other hand, never objected to the former law. We do not believe it is unfair to distinguish between one who has sought a change in the law, and one who did not.

110

Pa. 252, 318 A.2d 351 (1971); *Commonwealth v. Barnette,* 445 Pa. 288, 285 A.2d 141 (1971). In each instance we are concerned with a right which only the defendant can give up and it therefore follows that a waiver cannot be found to exist unless it is an informed one.

Here the question is not the abandonment by the defendant of a right but rather whether counsel has properly raised the issue to be heard. The distinction between issue preservation and waiver of a right was alluded to by the U. S. Supreme Court in *Tollett v. Henderson,* 411 U.S. 258, 93 S.Ct. 1602, 36 L.Ed.2d 335 (1973).[13] There the Court concluded the preclusion of a federal constitutional claim arising before the entry of a plea of guilt was not a "waiver" requiring a showing of an intentional and knowing relinquishment or abandonment of the claim.[14] The justification for the foreclosure of consideration of these questions was found in the importance of the integrity of the guilty plea to the proper functioning of the process. Thus the foreclosure was not premised upon the voluntary and knowing relinquishment of waiver but rather resulted from the dictates of the procedure. The *Henderson* Court expressed the view that ineffective assistance of counsel in the entry of the plea provided an adequate protection against any possible injustice.

By analogy we are not saying that the asserted claim is foreclosed because appellant knowingly and intelligently

13. Henderson first sought habeas corpus relief in the Tennessee courts on the ground that he had been deprived of his constitutional right because Negroes had been excluded from the grand jury which indicted him. The state courts held that Henderson had waived his claim by failure to raise it before pleading to the indictment, and by pleading guilty. Henderson then filed in the federal system seeking habeas corpus release on the same ground. The government conceded that such systematic exclusion did exist and the District Court so found.

14. If the issue were to be cast solely in terms of "waiver," the Court of Appeals was undoubtedly correct in concluding that there had been no such waiver here.
*Tollett v. Henderson, supra* at 266, 93 S.Ct. at 1607.
In this case it was clear that there could be no waiver since Henderson was not aware of a right to challenge the array.

abandoned it. To the contrary, the foreclosure results from the failure to properly raise and preserve the issue and that insistence upon strict compliance with the rules of issue preservation is essential to the efficient, effective and just operation of our system of review. Similar to the conclusion reached in *Henderson* here, too, the doctrine of ineffective assistance is the stop valve to avoid injustice.

The Judgments of Sentence should be affirmed.

## OPINION IN SUPPORT OF REVERSAL

ROBERTS, Justice.

For the reasons set forth in my Opinion in Support of Reversal in *Commonwealth v. Ernst*, 476 Pa. 102, 381 A.2d 1245 (1977) (opinion of Roberts, J., joined by O'Brien and Manderino, JJ.), I would reverse.

The opinion of Mr. Justice Nix asserts that a defendant on direct appeal, because he did not object at trial to a jury instruction on the burden of proof for the insanity defense which was proper under the then applicable law, is denied the application of a change which has occurred in the law since the time of trial. The opinion does so even though it in no way disputes that the new law would otherwise apply. Incredibly, the opinion would reach this result despite its own acknowledgment that the defendant did not waive his right to a jury charge based upon now existing law since he had no knowledge that such a right existed. *See Johnson v. Zerbst*, 304 U.S. 458, 464, 58 S.Ct. 1019, 1023, 82 L.Ed. 1461 (1938) (waiver requires "an intentional relinquishment or abandonment of a known right or privilege").

Notwithstanding the lack of waiver, under the talisman of "issue preservation" and "orderly administration of justice," the opinion charges the defendant with anticipating a change in decisional law, a burden we do not even impose on trial court judges. The opinion then goes on to state that defendant's avenue for relief is through a claim of ineffective assistance of counsel. This is a hollow remedy, indeed, since under this Court's standard a trial counsel's decisions

are constitutionally effective if they have *"some reasonable basis* designed to effectuate his client's interests." *Commonwealth ex rel. Washington v. Maroney,* 427 Pa. 599, 604, 235 A.2d 349, 352 (1967) (emphasis in original). Certainly, counsel's failure to object to a permissible charge under existing law has a reasonable basis. Thus, according to the opinion of Mr. Justice Nix, although appellant has not waived his right to a jury charge reflecting now prevailing law, and although appellant's attorney could not reasonably have been expected to object at trial, appellant, however illogical it may be, must nevertheless have objected if he is to raise the issue on appeal.

The rule that a party who has not objected at trial may obtain a new trial if before final judgment an intervening decision renders the jury instruction erroneous has long been applied by this Court in civil actions. Certainly the rule has equal force in criminal cases, especially in light of the greater constitutional protections which have always been accorded criminal proceedings.

In *Azzarello v. Black Brothers Co.,* 480 Pa. 547, 391 A.2d 1020 (1978), a products liability action, this Court affirmed a lower court's grant of a new trial on the grounds that a decision by this Court subsequent to trial had rendered the jury instruction on burden of proof erroneous. We did so even though the defendant had not objected at trial to the jury instruction. Writing for a unanimous Court, Mr. Justice Nix stated:

"In the instant case, appellee's counsel made timely request for a new trial based on the subsequent decision of this Court in *Berkebile,* [*Berkebile v. Brantley Helicopter Corp.,* 462 Pa. 83, 337 A.2d 893] supra, which the court en banc granted to insure a just and comprehensive resolution of the case. This view does not undercut the rationale articulated by this Court in our decision in *Dilliplaine v. Lehigh Valley Trust Co.,* [457 Pa. 255, 322 A.2d 114] supra. One of the principle considerations in reaching our result in *Dilliplaine,* supra, was the need to afford the trial court an opportunity to correct alleged error. An earlier

objection to the 'unreasonably dangerous' language would have been unavailing at the time of the trial because the instruction as given tracked the language of Section 402A of the Restatement. This Court expressly embraced Section 402A in *Webb v. Zern*, 422 Pa. 424, 220 A.2d 853 (1966). It was not until after the filing of the *Berkebile* decision that appellee was provided with a basis for the averment of error."

Id., 480 Pa. at 552, 391 A.2d at 1023.

Similarly, in *Kuchinic v. McCrory*, 422 Pa. 620, 222 A.2d 897 (1966) this Court reversed the trial court judgment and ordered a new trial where the jury charge on burden of proof correctly stated prevailing law but was rendered erroneous by a subsequent decision of this Court. In rejecting appellee's argument that appellants were precluded from challenging the court's charge because they had not objected below, we stated:

"The effective administration of justice ordinarily requires that a litigant who fails to raise at trial an available objection waives it on appeal. This Court is reluctant to permit a party to allege error in the jury charge for the first time on appeal, because it would be manifestly unfair to permit a party to take his chances on a verdict, and then complain if he loses, when an earlier objection would have afforded the trial court an opportunity to correct the error. *Lobalzo v. Varoli*, 422 Pa. 5, 220 A.2d 634 (1966); *Bell v. Yellow Cab Co.*, 399 Pa. 332, 160 A.2d 437 (1960). The present case, of course, is one where an earlier objection would have been to no avail, because the charge correctly stated prevailing law. Furthermore, the rule espoused by appellee would compel counsel to urge upon the trial court every conceivable theory, on the mere chance that, before his case is finally concluded, one such theory might become the law. Since, by hypothesis, the trial court would have to overrule any objection based on his failure to adopt one of these theories, on appeal, the winning party below would be in the same position as the instant appellee. Indeed this requirement would tend to

delay justice, for the court below would still have to consider and rule on each theory. Therefore, we are unwilling to conclude that the appellants' failure to interject the rationale of *Griffith [Griffith v. United Airlines,* 416 Pa. 1, 203 A.2d 796] into the trial constitutes a waiver and precludes them from now seeking the benefit of that decision."

Id., 422 Pa. at 626–27, 222 A.2d at 901 (footnotes omitted). Accord, *Brubaker v. Reading Eagle Co.,* 422 Pa. 63, 221 A.2d 190 (1966) (new trial granted because of intervening change in law of libel requiring proof of malice).

It would be the height of unreason to apply a stricter rule to criminal cases than to civil actions. The jurisprudential principles which mandate the application on direct appeal of an intervening change in law, even where an objection has not been interposed at trial, apply equally to both proceedings. Two paramount principles are implicated: judicial power and fairness to litigants.

Since as early as *United States v. Schooner Peggy,* 5 U.S. (1 Cranch) 103, 2 L.Ed. 49 (1801) it has been recognized that a court does not have the power to enforce that which is no longer law but rather must apply the law as it exists at the time of its decision. In *Schooner Peggy,* Mr. Justice Marshall wrote:

"But if, subsequent to the judgment and before the decision of the appellate court a law intervenes and positively changes the rule which governs, the law must be obeyed, or its obligation denied .... In such a case the court must decide according to existing laws, and if it be necessary to set aside a judgment, rightful when rendered, but which cannot be affirmed but in violation of law, the judgment must be set aside."

Id. at 110. Accord, *Cort v. Ash,* 422 U.S. 66, 95 S.Ct. 2080, 45 L.Ed.2d 26 (1975); *Hamling v. United States,* 418 U.S. 87, 94 S.Ct. 2887, 41 L.Ed.2d 590 (1974); *Bradley v. School Board of Richmond,* 416 U.S. 696, 711, 94 S.Ct. 2006, 2016, 40 L.Ed.2d 476 (1974); *Thorpe v. Housing Authority,* 393 U.S. 268, 89 S.Ct. 518, 21 L.Ed.2d 474 (1969); *Ziffrin, Inc. v. United*

*States,* 318 U.S. 73, 63 S.Ct. 465, 87 L.Ed. 621 (1943); *Vandenbark v. Owens–Illinois Glass Co.,* 311 U.S. 538, 61 S.Ct. 347, 85 L.Ed. 327 (1941); *United States v. Chambers,* 291 U.S. 217, 54 S.Ct. 434, 78 L.Ed. 763 (1934).

Likewise, it is unfair to litigants whose case is not yet final to subject them to a law that is now recognized as offensive. Evenhanded decision–making requires that similarly situated individuals on direct appeal be treated the same. This concept of fairness is reflected in the analogous principle that there can be neither a valid conviction nor a valid judgment entered upon a conviction unless the law creating the offense is still in existence. *United States v. Chambers,* 291 U.S. 217, 54 S.Ct. 434, 78 L.Ed. 763 (1934). "The repeal [of a penal statute] is regarded as an indication that the state no longer wants such acts punished, regardless of when they took place, and no longer views them as criminal." *Linkletter v. Walker,* 381 U.S. 618, 626 n.9, 85 S.Ct. 1731, 1736 n.9, 14 L.Ed.2d 601 (1965) *quoting* Note, 71 Yale L.J. 907, 914 (1962). See Opinion in Support of Reversal in *Commonwealth v. Ernst,* supra; Opinion in Support of Reversal in *Commonwealth v. Cain,* 471 Pa. 140, 369 A.2d 1234 (1977) (opinion of Roberts, J., joined by O'Brien and Manderino, JJ.).

To affirm appellant's conviction when the elements of the crime have not been established by the same quantum of proof as required at the time of direct appeal, as they have not here, is to apply a rule of law no longer valid. Further, contrary to Mr. Justice Nix's assertion, appellant does not have a viable remedy for this clear violation of his rights. As previously stated, appellant's counsel cannot be considered ineffective when his representation at trial comported with existing law.

The Supreme Court's holding in *O'Connor v. Ohio,* 385 U.S. 92, 87 S.Ct. 252, 17 L.Ed.2d 189 (1966) (per curiam) makes evident that our rule in civil cases must apply with equal force to criminal proceedings:

"We hold that in these circumstances the failure to object in the state courts cannot bar the petitioner from

116

asserting this federal right. . . . . Defendants can no
more be charged with anticipating the *Griffin* [*Griffin v.
State of California*, 380 U.S. 609, 85 S.Ct. 1229, 14 L.Ed.2d
106] decision than can the States. Petitioner had exhaust-
ed his appeals in the Ohio courts and was seeking direct
review here when *Griffin* was handed down. Thus, his
failure to object to a practice which Ohio had long allowed
cannot strip him of his right to attack the practice follow-
ing its invalidation by this Court."

Id. at 93, 87 S.Ct. at 253–54. Accord, *United States ex rel.
Mitchell v. Pinto*, 438 F.2d 814 (3d Cir.), cert. denied, 402
U.S. 961, 91 S.Ct. 1622, 29 L.Ed.2d 124 (1971) (*Griffin* claim
not barred by failure to object to jury charge proper at time
of trial); *Doby v. Beto*, 371 F.2d 111 (5th Cir. 1967) (*Aguilar*
claim not barred by failure to object to evidence properly
admitted at time of trial); *Ledbetter v. Warden, Maryland
Penitentiary*, 368 F.2d 490 (4th Cir. 1966) (*Davis* claim not
barred by failure to object to admission of confession proper-
ly admitted at time of trial); *United States v. LaVallee*, 334
F.2d 331 (2d Cir. 1964), cert. denied, 381 U.S. 951 (1965)
(*Mapp* claim not barred by failure to object to evidence
properly admitted at time of trial).

Notwithstanding the Supreme Court's guidance and our
own rule in civil cases, the opinion of Mr. Justice Nix denies
criminal defendants the application of the law existing at
the time of direct appeal. In doing so, it relies on an
erroneous reading of *Tollett v. Henderson*, 411 U.S. 258, 93
S.Ct. 1602, 36 L.Ed.2d 335 (1973). In *Tollett*, a defendant
who had been sentenced following the entry of a guilty plea
with advice of counsel sought federal habeas corpus relief
alleging that he had been indicted by an unconstitutionally
selected grand jury. The Supreme Court denied relief,
holding that, where a guilty plea has been entered, a defend-
ant may obtain federal collateral relief only when he estab-
lishes that the plea was either involuntarily entered or
entered upon incompetent advice of counsel. The Court's
rationale for denying relief even though the defendant had
been unaware of the constitutional infirmity at the time of

his plea was that "a guilty plea represents a break in the chain of events which has preceded it in the criminal process." Id. at 267, 93 S.Ct. at 1608. As stated in *Brady v. United States*, 397 U.S. 742, 748, 90 S.Ct. 1463, 1468–69, 25 L.Ed.2d 747 (1970) (footnote omitted):

> "Central to the plea and the foundation for entering judgment against the defendant is the defendant's admission in open court that he committed the acts charged in the indictment. He thus stands as a witness against himself and he is shielded by the Fifth Amendment from being compelled to do so—hence the minimum requirement that his plea be the voluntary expression of his own choice. But the plea is more than an admission of past conduct; it is the defendant's consent that judgment of conviction may be entered without a trial—a waiver of his right to trial before a jury or a judge."

Unlike *Tollett*, appellant did not plead guilty and thereby waive his right to a jury trial. Rather, appellant is entitled to a fair adjudication of his guilt not only at trial but also on appellate review.

In determining the applicable law at the time of appellate review, there is no rational basis upon which a distinction can be drawn between civil and criminal cases. The same principles of judicial power and fairness which apply in civil actions apply equally, and are even more compelling, in criminal cases. Insistence that the defendant make a futile objection to a jury charge that conforms with existing law serves only to thwart the proper functioning of the judicial process. Because there is no means by which such a rule can be implemented, particularly given our recognition that counsel cannot be held to the standard of soothsayer, the rule's only effect is to deny criminal defendants the protections we have long afforded civil litigants.

Appellant's conviction should be reversed and a new trial granted.

O'BRIEN, C. J., and FLAHERTY, J., join in this opinion in support of reversal.