Clyde Eugene HILL, Petitioner,

v.

Charles ZIMMERMAN, et al., Respondents.

Civ. No. 82–0307.

United States District Court, M. D. Pennsylvania.

June 23, 1982.

Clyde Eugene Hill, pro se.

William A. Behe, Deputy Dist. Atty., Harrisburg, Pa., for respondents.

1. 18 Pa.C.S.A. § 2502(b) (1972); now classified as murder of the third degree, see 18 Pa.C.S.A. § 2502(c) (1980–81 supp.).

## MEMORANDUM AND ORDER

CONABOY, District Judge.

Petitioner, Clyde Eugene Hill, presently incarcerated in the State Correctional Institution at Huntingdon, Pennsylvania, filed this habeas corpus action on March 10, 1982, pursuant to 28 U.S.C. § 2254 (1966). In it he requests this Court to set aside his October 1972 criminal conviction in the Court of Common Pleas of Dauphin County, Pennsylvania, of two counts of second degree murder.[1] The principal ground raised in support thereof is that the trial court's instruction to the jury placing the burden of proving insanity by a preponderance of the evidence upon the Petitioner violated the Due Process Clause of the Fourteenth Amendment. An Answer to the petition was filed by the Respondents on May 3, 1982 in which the relevant state court documents were included and, thus, the matter is currently ripe for disposition. For the reasons set forth herein, the request for a writ of habeas corpus will be denied and the petition will be dismissed.

## PROCEDURAL HISTORY AND FACTS

On October 18, 1972 Petitioner was convicted by a jury of two counts of second degree murder and was sentenced to consecutive ten (10)—twenty (20) year terms of imprisonment. On direct appeal, the Supreme Court affirmed the judgments of sentence. *Commonwealth v. Hill*, 453 Pa. 349, 310 A.2d 88 (1973).[2] Within the course of his opinion, Justice Eagen briefly summarized the relevant facts surrounding Petitioner's crime:

> Hill and one Antoinette Pledger lived together from 1963 to 1971, and during that time had two children. In 1971, Pledger left Hill and began living with Richard J. Harris. In the early morning hours of April 16, 1972, Hill left the home of his grandfather, with whom he was residing, and proceeded across the street to a

2. The propriety of the sentences was the only issue addressed by the Pennsylvania Supreme Court on this appeal. Other issues were not considered at that time since no post-trial motions were filed.

parked car in which Pledger and Harris were sitting. Hill engaged the two in a conversation for a short time, then drew a .22 caliber pistol from his pocket and fatally shot them both in the left temples. He then returned to the home of his grandfather, placed the pistol on a table, and told his grandfather to call the police and turn him in. *Id.* at 351, 310 A.2d 88.

On May 9, 1977, Hill filed a *pro se* petition under the Pennsylvania Post-Conviction Hearing Act,[3] in which he raised an issue relating to the ineffectiveness of his trial counsel. The trial court then appointed new counsel for Hill and, after a hearing, granted Petitioner permission to file post-verdict motions *nunc pro tunc.* After the filing of these motions and argument thereon, the Court of Common Pleas of Dauphin County denied the Petitioner's motion for a new trial in an opinion and order dated September 13, 1978. This denial was appealed directly to the Pennsylvania Supreme Court, but the case was transferred to a special panel of the Superior Court of Pennsylvania and listed at No. 1, Special Transfer Docket. The Superior Court, in a per curiam opinion dated December 21, 1979, affirmed the order of trial court; however, the panel recommended that the Supreme Court accept review of the appeal to further consider the issue of the burden of proof as to the defense of insanity in a criminal case. The Pennsylvania Supreme Court granted allocatur on February 22, 1980.

The Petitioner presented the following three arguments for review to the Supreme Court of Pennsylvania: (1) that the trial judge erred in instructing the jury that Hill had the burden of proving the defense of insanity by a preponderance of the evidence;[4] (2) that the trial court's instruction on the issue of malice was improper in that it shifted the burden of proof to the Defendant by presuming an element of the offense upon proof of other elements,[5] in violation of the principles established in *Mullaney v. Wilbur,* 421 U.S. 684, 95 S.Ct. 1881, 44 L.Ed.2d 508 (1975) and *Patterson v. New York,* 432 U.S. 197, 97 S.Ct. 2319, 53 L.Ed.2d 281 (1977); and (3) that Hill was entitled to the retroactive benefit of the United States Supreme Court's holdings in *Mullaney* and *Patterson* and other similar Pennsylvania Supreme Court decisions.[6]

On October 31, 1980, an evenly divided Pennsylvania Supreme Court affirmed Petitioner's conviction. *Commonwealth v. Hill,* 492 Pa. 100, 422 A.2d 491 (1980). The Opinion in Support of Affirmance did not address the substantive merits of Hill's claims; rather, it found that trial counsel's failure to interpose specific objections to the charge precluded appellate review of any alleged errors in the trial court's instructions. See Pa.R.Crim.P. 1119(b).[7] Specifically, Justice Nix observed that this "foreclosure results from the failure to properly raise and preserve the issue and that insistence upon strict compliance with the rules of issue preservation is essential to the efficient, effective and just operation of our system of review." 492 Pa. at 111, 422 A.2d 491. Thereafter, on March 10, 1982,

---

3. 19 P.S. §§ 1180–1 *et seq.,* Act of January 25, 1966, P.L. (1965) 1580, §§ 1 *et seq.*

4. The relevant portion of the charge read:
... [T]he person accused of a crime is not required to present evidence or prove anything in his own defense except in this particular trial where the Defendant raises a defense of insanity, and in that situation *the burden rests on the defendant to prove to your satisfaction that defense.* Trial transcript at 269 (emphasis added). A similar instruction was again given at pp. 275–76.

5. As to this, the jury was instructed that:
He who uses a deadly weapon without a sufficient cause or provocation *must be presumed* to do it wickedly or from a bad heart. Trial Transcript at 273. (emphasis added).

6. See *Commonwealth v. Moyer,* 466 Pa. 464, 353 A.2d 447 (1976); *Commonwealth v. Williams,* 463 Pa. 370, 344 A.2d 877 (1975); *Commonwealth v. Demmitt,* 456 Pa. 475, 321 A.2d 627 (1974); *Commonwealth v. Rose,* 457 Pa. 380, 321 A.2d 880 (1974).

7. This rule regarding requests for instructions to the jury provides:
No portions of the charge nor omissions therefrom may be assigned as error, unless specific objections are made thereto before the jury retires to deliberate.

Petitioner filed the instant federal habeas corpus action under 28 U.S.C. § 2254 advancing essentially the same grounds for relief as he raised before the Supreme Court of Pennsylvania.

## DISCUSSION

■■■ A state prisoner is entitled to relief under 28 U.S.C. § 2254 only if he is held "in custody in violation of the Constitution or laws or treaties of the United States." See *Engle v. Isaac,* —— U.S. ——, 102 S.Ct. 1558, 1567, 71 L.Ed.2d 783 (1982). Consequently, the scope of review of a federal habeas court is limited by the well-established principle that "[a] state prisoner can win a federal writ of habeas corpus only upon a showing that the state participated in the denial of a fundamental right protected by the Fourteenth Amendment." *Cuyler v. Sullivan,* 446 U.S. 335, 342–43, 100 S.Ct. 1708, 1715, 64 L.Ed.2d 333 (1980); See *Rose v. Hodges,* 423 U.S. 19, 21, 96 S.Ct. 175, 177, 46 L.Ed.2d 162 (1975); *Rock v. Zimmerman,* 543 F.Supp. 179, 184 (M.D.Pa. 1982). Moreover, when a procedural default at trial has barred an inmate from obtaining adjudication of his claim in the state appellate courts, federal habeas relief is not available absent a showing of "cause" and "actual prejudice." *Wainwright v. Sykes,* 433 U.S. 72, 87, 97 S.Ct. 2497, 2506, 53 L.Ed.2d 594 (1977). However, "[i]f a state prisoner alleges no deprivation of a federal right, § 2254 is simply inapplicable", and "[i]t is unnecessary in such a situation to inquire whether the prisoner preserved his claim before the state courts." *Engle v. Isaac, supra,* 102 S.Ct. at 1567 n. 19.

*A.* The first issue raised in Hill's habeas corpus petition concerns the trial court's charge placing the burden of proving insanity on the defendant by a preponderance of the evidence.[8] As a federal habeas court, our inquiry into this issue is a narrow one;

we must determine only whether the Commonwealth was constitutionally prohibited from requiring the Petitioner to prove this affirmative defense. See *United States ex rel. Goddard v. Vaughn,* 614 F.2d 929, 931 (3d Cir.), *cert. denied,* 449 U.S. 844, 101 S.Ct. 127, 66 L.Ed.2d 53 (1980).

In *Leland v. Oregon,* 343 U.S. 790, 72 S.Ct. 1002, 96 L.Ed. 1302 (1952), the Supreme Court held that the state of Oregon could, consistent with the Due Process Clause, require a defendant in a murder case to prove insanity beyond a reasonable doubt. Despite this unequivocal pronouncement by the Court, subsequent decisions seemed to cast doubt upon the continued validity of the *Leland* rule. In *In re Winship,* 397 U.S. 358, 364, 90 S.Ct. 1068, 1072, 25 L.Ed.2d 368 (1970), the Court announced that "the Due Process Clause protects the accused against conviction except upon proof beyond a reasonable doubt of every fact necessary to constitute the crime with which he is charged." And five years later, in *Mullaney v. Wilbur, supra,* the Supreme Court, considering the Maine law of homicide, held unconstitutional an instruction that permitted an inference of malice if the jury found the homicide in question was both intentional and unlawful, unless the defendant showed by a preponderance of the evidence that the crime was committed in the heat of passion on sudden provocation. As explained by the Third Circuit in *Goddard,* "this persuasion—shifting arrangement relieved the prosecution of its constitutional obligation to establish every fact critical to a greater degree of culpability." 614 F.2d at 933.

■■■ A year after *Mullaney* was decided, however, the Court confirmed the validity of *Leland v. Oregon* when it dismissed for want of a substantial federal question an appeal from the Delaware Supreme Court affirming a conviction wherein the

---

8. This was a proper instruction under the prevailing state law at the time of Hill's trial in 1972. *Commonwealth v. Vogel,* 440 Pa. 1 [268 A.2d 89] (1970). The fact that Pennsylvania later decided to shift the burden of proof on insanity to the prosecution, *Commonwealth v.*

*Demmitt,* 456 Pa. 475 [321 A.2d 627] (1974), as a matter of "state evidentiary law", *Commonwealth v. Ernst,* 476 Pa. 102 [381 A.2d 1245] (1977) (Opinion in Support of Affirmance), has no bearing on the present constitutional question.

defendant was required to prove his affirmative defense of insanity by a preponderance of the evidence. *Rivera v. Delaware*, 429 U.S. 877, 97 S.Ct. 226, 50 L.Ed.2d 160 (1976). The specific claim advanced by the petitioner in *Rivera* and implicitly rejected by a majority of the Court was that *Leland* had been overruled by *Winship* and *Mullaney*. See *Patterson v. New York, supra*, 432 U.S. at 205, 97 S.Ct. at 2324. The Supreme Court's latest comment on this issue occurred in *Patterson*, wherein Justice White, writing for the majority, clearly stated that "[w]e are unwilling to reconsider *Leland* and *Rivera*. *Id.* at 207, 97 S.Ct. at 2325. In light of the foregoing discussion of Supreme Court precedents, we conclude that the Due Process Clause does not prohibit the states from requiring a defendant to carry the burden of disproving sanity; moreover, the lower federal courts, adhering to *Leland* and *Rivera*, have consistently so held. See *United States ex rel. Goddard v. Vaughn, supra; Nelson v. Hutto*, 597 F.2d 137 (8th Cir. 1979); *Duisen v. Wryick*, 566 F.2d 616 (8th Cir. 1977); *Grace v. Hopper*, 566 F.2d 507 (5th Cir.), *cert. denied*, 439 U.S. 844, 99 S.Ct. 139, 58 L.Ed.2d 144 (1978); *United States ex rel. Coleman v. Hicks*, 498 F.Supp. 636 (D.N.J. 1980). Accordingly, since the state trial court's instruction in this case on the issue of insanity suffers from no constitutional infirmity, we must deny Hill's request for a writ of habeas corpus as to the first ground advanced in his petition.

*B.* Petitioner's other claim in this federal habeas action relates to the trial court's instruction on the element of malice for a second-degree murder conviction. Specifically, the Court charged that:

> He who uses a deadly weapon without a sufficient cause or provocation *must be presumed* to do it wickedly or from a bad heart. Trial Transcript at 273 (emphasis added).

Citing the following language from *Patterson v. New York, supra*, in which the Supreme Court construed its holding in *Mullaney v. Wilbur, supra*, the Petitioner contends that the above instruction was violative of the standard set forth therein:

> *Mullaney* surely held that a State must prove every ingredient of an offense beyond a reasonable doubt, and that it may not shift the burden of proof to the defendant by presuming that ingredient upon proof of the other elements of the offense .... Such shifting of the burden of persuasion with respect to a fact which the State deems so important that it must be either proved or presumed is impermissible under the Due Process Clause.
>
> ... [A] killing became murder in Maine when it resulted from a deliberate, cruel act committed by one person against another, "suddenly without any, or without a considerable provocation." Premeditation was not within the definition of murder; but malice, in the sense of the absence of provocation, was part of the definition of that crime. Yet malice, i.e., lack of provocation, was presumed and could be rebutted by the defendant only by proving by a preponderance of the evidence that he acted with heat of passion upon sudden provocation. In *Mullaney* we held that however traditional this mode of proceeding might have been, it is contrary to the Due Process Clause as construed in *Winship*.
>
> As we have explained, nothing was presumed or implied against Patterson ....
> 432 U.S. at 215–16, 97 S.Ct. at 2329–30 (citation omitted).

Petitioner's argument states "at least a plausible constitutional claim." *Engle v. Isaac, supra*, 102 S.Ct. at 1569. Therefore, since a specific objection to this instruction was not made at trial, as required by Pennsylvania law,[9] we must proceed to determine "whether the principles articulated in *Wainwright v. Sykes, supra*, bar consideration of the claim in a federal habeas proceeding." *Id.*

Under *Wainwright v. Sykes*, the failure of a habeas petitioner to observe a state's contemporaneous objection rule re-

---

9. Pa.R.Crim.P. 1119(b); see footnote 7, *supra*.

sults in a procedural default which precludes litigation of the alleged error in federal court unless the petitioner can demonstrate "cause" for his failure to raise the question at trial, and "prejudice" accruing from the error. See *Hines v. Enomoto*, 658 F.2d 667, 673 (9th Cir. 1981). In retreating from the "deliberate by-pass" standard of *Fay v. Noia*, 372 U.S. 391, 83 S.Ct. 822, 9 L.Ed.2d 837 (1963), the Court in *Wainwright* bottomed its decision largely on principles of comity and federalism.

> The failure of the federal habeas courts generally to require compliance with a contemporaneous-objection rule tends to detract from the perception of the trial of a criminal case in state court as a decisive and portentous event. A defendant has been accused of a serious crime, and this is the time and place set for him to be tried by a jury of his peers and found either guilty or not guilty by that jury. To the greatest extent possible all issues which bear on this charge should be determined in this proceeding: the accused is in the courtroom, the jury is in the box, the judge is on the bench, and the witnesses, having been subpoenaed and duly sworn, await their turn to testify. Society's resources have been concentrated at that time and place in order to decide, within the limits of human fallibility, the question of guilt or innocence of one of its citizens. Any procedural rule which encourages the result that those proceedings be as free of error as possible is

thoroughly desirable, and the contemporaneous-objection rule surely falls within this classification.

> We believe the adoption of the *Francis* [10] rule in this situation will have the salutary effect of making the state trial on the merits the "main event", so to speak, rather than a "tryout on the road" for what will later be the determinative federal habeas hearing. There is nothing in the Constitution or in the language of § 2254 which requires that the state trial on the issue of guilt or innocence be devoted largely to the testimony of fact witnesses directed to the elements of the state crime, while only later will there occur in a federal habeas hearing a full airing of the federal constitutional claims which were not raised in the state proceedings. If a criminal defendant thinks that an action of the state trial court is about to deprive him of a federal constitutional right there is every reason for his following state procedure in making known his objection. 433 U.S. at 90, 97 S.Ct. at 2508.

The Supreme Court did not define either of these critical terms, *i.e.*, "cause" or "prejudice"; rather the "precise content" of this new standard was to be left for later cases. *Id.* at 91, 97 S.Ct. at 2509. However, like the litigant in *Wainwright*, the instant Petitioner has advanced no explanation for his failure to object to this particular instruction at trial [11] and, therefore, we similarly "feel confident in holding without further

---

**10.** *Francis v. Henderson*, 425 U.S. 536, 96 S.Ct. 1708, 48 L.Ed.2d 149 (1976).

**11.** In an amended petition filed May 6, 1982 (Doc. # 10), the Petitioner did explain the reason for his failure to object to the instruction regarding the burden of proof on the issue of insanity. Therein, he states:

> "After the trial court had instructed the jury that I had the burden to prove my innocence by reason of insanity my lawyer consulted with me and he expressed a belief that it was improper to place the burden upon me, but when I asked him why he didn't object he then told me that the Pennsylvania Supreme Court at that time allowed the burden to be placed upon me to prove and that an objection was not important anyway because the State Supreme Court also recognized the 'basic and fundamental error' rule, which meant

that if the legal instruction was later found to violate my constitutional right I would automatically be granted relief to reverse the conviction.
>
> Based upon that reasoning I then agreed not to invoke the objection rule because I was lead [sic] to believe that my rights were protected under the State's 'basic and fundamental error' rule. I would not have abandoned my objection rule rights had I known no such protection would ever be denied to me . . . . But, when my appeal finally reached the Supreme Court of Pennsylvania for review in October, 1980 they had eliminated their previous 'basic and fundamental' rule and instead were only using the objection rule which I had been misled into not invoking."

Clearly, this explanation relates only to the first issue discussed above (§ A of this Memo-

elaboration that ... ["cause" does] not exist here." *Id.* See *Conquest v. Mitchell,* 618 F.2d 1053 (4th Cir. 1980).[12] Since we find that Petitioner has failed to demonstrate adequate cause for his procedural default at trial, we are therefore precluded from reviewing this second claim on its merits.[13]

In sum, none of the grounds presented by Hill in this action [14] entitle him to federal habeas corpus relief and, for the foregoing reasons, we will deny his request for a writ of habeas corpus and dismiss the petition.

An appropriate Order will be entered.

randum), wherein we concluded that no constitutional violation was presented, and does not address the reasons for Hill's failure to interpose an objection to the allegedly improper "presumption of malice" instruction. However, even assuming that Petitioner would advance the same justification for his procedural default as to this instruction, we cannot say that this explanation constitutes sufficient "cause" under the *Wainwright* formula. The undisputed facts indicate that counsel was "aware enough of the possibility of error in this instruction to object to it at trial," *Grace v. Butterworth,* 635 F.2d 1, 5 (1st Cir. 1980), and, therefore, his choice not to object was neither due to ignorance nor inadvertence and certainly cannot be labeled as constitutional ineffectiveness; rather, it must be considered a reasonable tactical or strategic trial decision. In such instances, a defendant is bound by the trial judgments of his lawyer and, consequently, the "cause" prong of the *Wainwright* standard is not satisfied. See *Wainwright v. Sykes, supra,* 433 U.S. at 98–99, 97 S.Ct. at 2512–13 (White, J., concurring); *Garrison v. McCarthy,* 653 F.2d 374, 378 (9th Cir. 1981); *United States ex rel. Abdus-Sabur v. Cuyler,* 653 F.2d 828, 833 (3d Cir.), *cert. denied,* 454 U.S. 1088, 102 S.Ct. 650, 70 L.Ed.2d 625 (1981); see also *Estelle v. Williams,* 425 U.S. 501, 512, 96 S.Ct. 1691, 1697, 48 L.Ed.2d 126 (1976); *Henry v. Mississippi,* 379 U.S. 443, 451, 85 S.Ct. 564, 569, 13 L.Ed.2d 408 (1965).

12. Additionally, the Supreme Court's comments in *Hankerson v. North Carolina,* 432 U.S. 233, 97 S.Ct. 2339, 53 L.Ed.2d 306 (1977) support our decision today. In that case, the Court held that the *Mullaney* rule should be applied retroactively, but it also provided the states with a significant measure of protection against a flood of new trials:

> Moreover, we are not persuaded that the impact on the administration of justice in those States that utilize the sort of burden-shifting presumptions involved in this case will be as devastating as respondent asserts. If the validity of such burden-shifting presumptions were as well settled in the States that have them as respondent asserts, then it is unlikely that prior to *Mullaney* many defense lawyers made appropriate objections to jury instructions incorporating those presumptions. Petitioner made none here. The North Carolina Supreme Court passed on the validity of the instructions anyway. The States, if they wish, may be able to insulate past convictions by enforcing the normal and valid rule that failure to object to a jury instruction is a waiver of any claim of error. 432 U.S. at 244 n. 8, 97 S.Ct. at 2345 n. 8.

13. Once it is determined that the "cause" element of the *Wainwright* test is not satisfied, a court need not address the "prejudice" prong. See *Garrison v. McCarthy, supra,* 653 F.2d at 379; *Cole v. Stevenson,* 620 F.2d 1055, 1062 (4th Cir.), *cert. denied,* 449 U.S. 1004, 101 S.Ct. 545, 66 L.Ed.2d 301 (1980).

14. Petitioner has also alleged an equal protection claim apparently relating to the Pennsylvania Supreme Court's procedure in assigning his case to a special Superior Court panel after the trial court had denied his motion for a new trial. See Document 11 at 9–10. We find no merit in this contention.